## COMMONWEALTH *vs.* CATHARINE HAYES.

Plymouth. Oct. 18. — Nov. 23, 1887. C. ALLEN & KNOWLTON, JJ., absent.

At the trial of a complaint against a married woman for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, she cannot, under the Pub. Sts. c. 169, § 18, cl. 1, testify to a private conversation with her husband, who managed the tenement as her agent, in relation to instructions which she gave him about the conduct of the business, for the purpose of showing that she acted in good faith in giving them.

At the trial of a complaint against a married woman for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, the evidence tended to show that the defendant's husband conducted the tenement, which was a hotel, as her agent, that she did not live on the premises; and that he, acting according to her wishes, instructed the bar-keeper not to sell liquors in violation of her license. The judge instructed the jury as follows: "In considering whether the defendant acted in good faith in giving instructions as to the conducting of her business in the hotel, and intending that her instructions should be obeyed, the jury may consider the defendant's relations to and practical connection with the business of her hotel, her means and opportunities of knowing how her business was conducted there in the matter of selling intoxicating liquors, and what information her interest and duty in that matter would reasonably induce her to seek and obtain. An instruction would not be given in good faith, which the person giving it, from the nature of the matter to which that instruction applied, and the character of the persons to whom it was given, could not reasonably expect to be obeyed, and which he did not follow by any supervision or care, for the purpose of ascertaining if that instruction was obeyed." *Held*, that the defendant had no ground of exception.

At the trial of a complaint against a married woman for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, the evidence tended to show that the defendant's husband conducted the tenement, which was a hotel, as her agent; that she did not live on the premises; and that he, acting according to her wishes, instructed the bar-keeper not to sell liquors in violation of her license. The judge instructed the jury as follows: "Nothing to the contrary appearing, the natural and just inference from a sale, by a servant employed in his master's shop, of his master's goods, there kept

for sale, would be that such a sale was authorized by the master. If a sale of intoxicating liquor was made in the hotel, during the time alleged in the complaint, by any person employed by the defendant to conduct her business at that hotel, without the defendant's knowledge, and really in opposition to her will, and the defendant in no way participated in, approved, or countenanced such sale, and this is clearly shown by the defendant, the defendant would not be responsible for such sale." *Held*, that the defendant had good ground of exception.

COMPLAINT for keeping and maintaining a common nuisance, to wit, a tenement in Brockton, used for the illegal sale and illegal keeping of intoxicating liquors, on May 1, 1886, and on divers other days and times between that day and August 3, 1886. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

It appeared that during all of the time named in the complaint the defendant was the holder of a license of the first class for the keeping and selling of intoxicating liquors, and also of a license as an innholder, under the provisions of the Pub. Sts. *c.* 100; that the licenses were procured to be used and were used for the purpose of carrying on the business of an innholder and seller of intoxicating liquors in the Occidental Hotel, in Brockton.

The defendant offered evidence tending to prove that she in no way or manner managed, controlled, or directed said business at any time, but left the management, control, and direction thereof, and the employment of necessary help, to her husband, John Hayes; that she did not live in or near said hotel, but in another part of the city, that during all of the period named in the complaint she was upon the premises of the Occidental Hotel but three times, and then only between the hours of nine and ten in the evening, and for the purpose of meeting her husband and of going with him to her home; and that at no other time was she notified, directly or indirectly, of any proceedings whatever at said hotel in violation of the conditions or provisions of her licenses; and there was no evidence in the case that she personally knew of the same.

It also appeared that the bar-keeper employed at said hotel during the period covered by said complaint was employed by the defendant's husband; and there was no evidence that the defendant ever saw or spoke to him.

There was evidence tending to prove illegal sales of intoxicating liquor by the bar-keeper in said hotel within the period named in the complaint.

There was also evidence tending to prove that the defendant's husband, in accordance with her wishes and with her knowledge, and upon her procuring said license to keep and sell intoxicating liquors, instructed the only person employed as a bar-keeper at said hotel during said period never to sell intoxicating liquor to minors or drunken men, or to any but guests of the house after eleven o'clock at night, or in any way to violate any of the provisions or conditions of said license, but to conduct the business at said hotel according to the provisions of said license in all respects; and that such instructions were reiterated to the bar-keeper two or three times a week during said period.

It appeared that the defendant's husband resided with her, and not at said hotel, but that he daily went to the hotel at about eight o'clock in the morning, and remained there until between nine and ten o'clock in the evening, when he left the same for his home.

All of the evidence relied upon by the government to show a breach of the conditions or provisions of said licenses related to acts happening between eleven o'clock at night and half past two or three o'clock in the morning, and to the sale of intoxicating liquors, and also to sales to persons other than guests upon the Lord's day.

The defendant's husband testified that his instructions to said bar-keeper were given in good faith, and with the intent that the same should be obeyed; and the defendant testified that she wished them obeyed.

The defendant testified in her own behalf, and was asked by her counsel what instructions were given by her to her husband, (no other person being present at the time she gave them,) that the bar-keeper at said hotel should not sell intoxicating liquors there in violation of the conditions or provisions of her license, and, for the purpose of showing her good faith, what were her reasons then given to her husband for such instructions. To this question the government objected, upon the sole ground that neither the husband nor the wife could testify as to a private conversation with each other; and the judge excluded it.

The defendant asked the judge to rule as follows : " 1. If the husband of the defendant, with her consent or by her direction, acting as her agent or as manager of the business at the Occidental Hotel during the time covered by said complaint, gave the bar-keeper full and proper instructions as to his duties under said license for the keeping and sale of intoxicating liquors, with proper warnings as to sales to all persons to whom, under said license, such liquors could not lawfully be sold, the jury are to regard such instructions as given by the defendant. 2. If the jury are satisfied as to the defendant's good faith as to the giving of such instructions and warning, it is immaterial whether her husband acted in good faith or not. 3. If the jury are satisfied that the defendant had only the bare legal proprietorship of the business at the Occidental Hotel, and took no control, direction, or management thereof, and knew nothing of any violations of law in carrying on said business, she is not liable under this complaint."

The judge declined to give the instructions asked for, but ruled as follows :

" 1. Nothing to the contrary appearing, the natural and just inference from a sale, by a servant employed in his master's shop, of his master's goods, there kept for sale, would be that such a sale was authorized by the master.

" 2. If a sale of intoxicating liquor was made in the Occidental Hotel, during the time alleged in the complaint, by any person employed by the defendant to conduct her business in that hotel, without the defendant's knowledge, and really in opposition to her will, and the defendant in no way participated in, approved, or countenanced such sale, and this is clearly shown by the defendant, the defendant would not be responsible for such sale.

" 3. Did the defendant, in good faith, give instructions intended to be obeyed and enforced, that no sales of intoxicating liquor should be made in her hotel by any of the persons employed by her to conduct her business there, in violation of the conditions of her license, and did the defendant know that those instructions were disregarded by the persons so employed, in their management of her hotel, and the intoxicating liquors in it?

" 4. In considering whether the defendant acted in good faith in giving instructions as to the conducting of her business in the Occidental Hotel, and intending that her instructions should be obeyed, the jury may consider the defendant's relations to and practical connection with the business of her hotel, her means and opportunities of knowing how her business was conducted there in the matter of selling intoxicating liquors, and what information her interest and duty in that matter would reasonably induce her to seek and obtain.

" 5. An instruction would not be given in good faith, which the person giving it, from the nature of the matter to which that instruction applied, and the character of the persons to whom it was given, could not reasonably expect to be obeyed, and which he did not follow by any supervision or care, for the purpose of ascertaining if that instruction was obeyed."

The jury returned a verdict of guilty; and the defendant alleged exceptions to the exclusion of the evidence offered, and to the clauses of the charge to the jury marked 1, 4, and 5.

*Asa P. French*, for the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

FIELD, J.  The provision of the Pub. Sts. *c.* 169, § 18, *cl.* 1, that " neither husband nor wife shall be allowed to testify as to private conversations with each other," is not confined to conversations upon subjects which are confidential in their nature, and it includes conversations between them relating to business done by one as agent of the other.  If the defendant could not be allowed to testify that she gave directions to her husband relating to her business, for the purpose of showing that they were given, she could not be allowed to testify that she gave them, for the purpose of proving that she acted in good faith in giving them.  The evidence offered was rightly excluded.  *Dexter* v. *Booth*, 2 Allen, 559.  *Jacobs* v. *Hesler*, 113 Mass. 157.  *Drew* v. *Tarbell*, 117 Mass. 90.  *Brown* v. *Wood*, 121 Mass. 137.

The fourth and fifth instructions given relate to the good faith of the defendant in giving directions as to the management of her business.  The presiding justice had already instructed the jury in conformity with the decision in *Commonwealth* v. *Wachendorf*, 141 Mass. 270.  If from the nature of the business and the character of the servants employed in it, the defendant could not

reasonably expect her directions to be obeyed, and if she took no care, and exercised no supervision, for the purpose of ascertaining that her directions were obeyed, it was competent for the jury to find that the directions were not given in good faith, and that the sales of intoxicating liquors on which the Commonwealth relied were made with her consent. It might be contended that she could not be convicted if she in fact expected that her directions would be obeyed, although this was not a reasonable expectation. We think that it was the duty of the defendant, if she intended to raise this question, distinctly to have called the attention of the court to it. The exceptions to this part of the charge are general, and must be overruled.

In *Commonwealth* v. *Wachendorf*, *ubi supra*, the defendant had a license, and the complaint charged that he unlawfully sold intoxicating liquors " between the hours of eleven at night and six in the morning," and it was said in the opinion " that the defendant was not liable criminally as a seller, when the sale proved was made by a servant, without his knowledge, in opposition to his will, and which was in no way participated in, approved, or countenanced by him," and *Commonwealth* v. *Nichols*, 10 Met. 259, was cited.

*Commonwealth* v. *Nichols* arose under the Rev. Sts. *c.* 47, § 2, and it was said in the opinion " that a sale by the servant, in the shop of the master, is only *prima facie* evidence of such sale by the master as would subject him to the penalty for violating the statute forbidding the sale of spirituous liquors without license; that the relation of these parties, the fact that the defendant was in possession of the shop and was the owner of the liquor, and that the sale was made by his servant, furnish strong evidence to authorize and require the jury to find the defendant guilty. . . . . Unexplained, they would be sufficient to convict the party."

In *Commonwealth* v. *Briant*, 142 Mass. 463, and in *Commonwealth* v. *Stevenson*, 142 Mass. 466, the complaints were for unlawfully selling intoxicating liquors to a minor, and the rulings which were held to be erroneous were to the effect that a sale of intoxicating liquors by a bar-tender in his master's shop, and in the regular course of his master's business, was *prima facie* a sale by the master, whether made to a minor or any other

person. In *Commonwealth* v. *Briant*, it was said that, "although we should admit that a jury might be warranted in inferring that such a sale was authorized, it would not follow that a court could rule that there is a presumption of fact that it was so, which is the purport of the instruction fairly construed."

These last cases must be taken to have decided that, in complaints for unlawfully selling intoxicating liquors, it is a question of fact for the jury whether a sale by a servant in violation of a license was made by the authority or with the consent of his master, and that no presumption of law of any kind arises from the facts that it was made by the servant in his master's shop, in the ordinary course of the master's business, and from liquors owned by the master and there kept for sale. Evidence of these facts may be sufficient to warrant a jury in inferring as a fact that the sale was made by the authority or with the consent of the master, but the weight of this evidence and the inferences to be drawn from it are for the jury.

Whether evidence, if believed, is sufficient to warrant a jury in finding a defendant guilty, is a question of law; and if the presiding justice in this case had charged the jury that, "nothing to the contrary appearing, evidence of a sale by a servant, in his master's shop, of his master's goods there kept for sale, would, if believed, warrant the jury in finding that the sale was authorized by the master," the instructions would perhaps have been unobjectionable. The expression, that "the natural and just inference from" such a sale is that it "was authorized by the master," may be considered, either as an expression of an opinion by the justice that the jury ought to find, if nothing to the contrary appeared, that the sale was in fact authorized by the master, or as a strong statement of the law that they would be warranted in so finding. Whether the first clause of the charge ought to be held to be such an expression of an opinion upon a matter of fact as to require a new trial, we need not decide. The second clause of the charge, although not specifically excepted to, puts upon the defendant the burden of clearly showing that the sale, if made by a person employed by her to conduct her business in the hotel, was made "without the defendant's knowledge, and really in opposition to her will, and the defendant in no way participated in, approved, or countenanced such

sale." The two clauses, taken together, may well have been understood by the jury to mean that the presumption was that a sale made by a servant, under the circumstances stated, was a sale authorized by the defendant, and that it was for the defendant clearly to show that the sale was made without her knowledge, and in opposition to her will, in order to escape criminal responsibility. It was wholly a question of fact whether the sales proved were made by the authority or with the consent of the defendant, and the burden was upon the government to prove this fact beyond a reasonable doubt. We think that the charge in this respect was erroneous.

*Exceptions sustained.*