THE STATE OF KANSAS v. FRANK SCHOENTHALER
*et al.*

**No. 12,301.** (65 Pac. 235.)

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS — *Nuisance* — *Circumstantial Evidence.*
A person charged with keeping a place where intoxicating liquors
are kept for sale in violation of section 2463 of the General
Statutes of 1901 may be convicted without direct proof of actual
sales, if the evidence, direct and circumstantial, be such as to
convince the jury beyond a reasonable doubt that intoxicating
liquors, found at defendant's place of business, were there kept by
him for such unlawful purpose.

Appeal from Ellis district court; LEE MONROE,
judge. Opinion filed June 8, 1901. Division one.
Affirmed.

STATEMENT.

THE defendants were the keepers of a lunch-counter
and restaurant. Acting under a writ authorizing him
to search and seize intoxicating liquors and appliances
used in keeping and selling them, issued against one
Nels Ballieu, the sheriff found in the defendants'
place of business 374 quart bottles of liquid labeled
"All Hail" and "Malt Mead," the latter bearing the
manufacturer's label of the Pabst Brewing Company,
of Milwaukee, and the former the label of the Val.
Blatz Brewing Company, also of Milwaukee, and nine
quart bottles labeled "Fine Old Blackberry Cordial,"
with no name of manufacturer or bottler thereon.
When seized, some of the goods were in that part of
defendants' place of business which might be called
the store, and were mingled with other goods which
were proved to have been kept for sale, and at the
time that the sheriff took them the defendants made
claim of ownership. In addition to these goods, the

The State v. Schoenthaler.

sheriff found and took into his possession a half-barrel of empty bottles, and other things which are not fully described in the testimony, but which, together with the articles mentioned, were exhibited to the jury without objection. It would seem, though it is not clearly shown, that the place of business had formerly been run by said Ballieu, and that defendants had been in possession but a few weeks. It does appear that after the seizure a warrant was immediately procured for defendants, who were arrested. A trifling quantity of other goods of the same character were found on the second search at defendants' shop.

These liquors were analyzed by Prof. Hamilton P. Cady, assistant professor of chemistry in the University of Kansas, who swore at the trial that they were beverages; that the "All Hail" and "Malt Mead" contained slightly less alcohol than ordinary barrel beer, while the "Fine Old Blackberry Cordial" contained about three times as much. He denominated the two former "light beer." There was no direct evidence of a sale of either of these beverages.

The information contained six counts, the first four of which charged the defendants in the usual manner with unlawful sales of intoxicating liquors without having a permit. The fifth count charged them with keeeeping and maintaining a club-room, under section 2466, General Statutes of 1901. The sixth count, although inartistically drawn, sufficiently charged the defendants with the maintenance of a nuisance under section 2463 of the statute; that is, with keeping a place where intoxicating liquors are kept for sale, and where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage. The defendants were unquestionably regarded by the jury

as guilty of keeping intoxicating liquors with such unlawful intent to sell.

At the conclusion of the evidence for the state the defendants asked the court to instruct the jury to acquit them, and, as to the first five counts of the information, this request was granted, but, as to the sixth, it was denied.    The refusal of the court so to instruct the jury is here assigned as error, and constitutes the principal grievance of the defendants.

It is, however, contended :  (1) That the verdict of ''not guilty,'' given by the jury under the instructions of the court as to the first five counts, was in effect a verdict of acquittal as to the crimes attempted to be charged in the sixth count, for which reason the court erred in overruling the defendants' motions for a new trial and in arrest of judgment, and in sentencing the defendants ;  (2) that a sufficient foundation for the testimony of Professor Cady, as an expert, was not laid ;  (3) that it was not clearly shown where the bottles, which were analyzed and which were sent by the county attorney to the chemist, had been kept at all times after they were taken from the defendants ;  (4) that the court erred in its instructions.    Both defendants were convicted and both appeal.

*A. A. Godard*, attorney-general, *J. P. Shutts*, county attorney, *James T. Nolan*, and *A. D. Gilkeson*, for The State.

*D. Rathbone*, for appellants.

The opinion of the court was delivered by

ELLIS, J. :  The verdict of acquittal as to the first five counts did not absolve the defendants from their amenability under the sixth, because, as applied to this case, the gist of the offense there alleged is the main-

tenance of a place where intoxicating liquors are kept with an unlawful intent; and while evidence of actual sales of such liquors is admissible as tending to prove such intent, such sales do not of themselves constitute the offense charged.

The contention that proper grounds for the admission of the testimony of Professor Cady, as an expert, were not laid, is without merit.   It appeared that his business was that of an analytical chemist; that he had been engaged in that employment as a practitioner and teacher for years, and that he possessed special knowledge in relation to the subjects about which he testified.   The allegation that the evidence did not sufficiently show where the bottles, the contents of which were analyzed, were kept from the time they were taken from the defendants until they reached Professor Cady, is not borne out by the record.   It does show that they were sent to and received by Professor Cady by express, and certainly there is no presumption that they had been tampered with while they were sealed up and in the possession of a common carrier.

As to the instructions of the court, those marked "additional," if standing alone, might be regarded as objectionable, in that they did not clearly state that the matters therein referred to must be "believed" by the jury beyond a reasonable doubt. But, under the rule frequently enunciated by this court, that all instructions are to be considered together, because the jury were properly advised of the rule in the other instructions, we do not regard the omission referred to as material, and do not think the jury could have been misled thereby.

We come now to the consideration of that which we regard the one important question presented to

us in this case.  Was the evidence sufficient to sustain the verdict?  Or, rather, was it so weak and manifestly insufficient that the judgment of the court below ought to be set aside by this court? The evidence contained in the record is not wholly satisfactory, but that fact alone will not authorize us to disturb the verdict and judgment.  It may be remarked, however, that we are not in possession of all of the evidence presented to the jury.  For instance, the record shows that certain bottles, some of which contained liquors and others of which were empty, and certain barrels and other articles, were exhibited to the jury without objection.  We infer that some of these bottles were filled with the fluid which Professor Cady denominated "light beer," and we are not apprised whether the empty bottles viewed by the jury were like those which contained that liquor or not.  If they were, the fact that a half-barrel of empty bottles of the same size, shape, color, and with the same labels, was found on the premises of the defendants would be some evidence that the beverage had been consumed at that place. Again, it may be, although we do not so decide, that the form, color and size of the bottles having the label of a brewing company on them would constitute some evidence of their contents, or at least of the purpose for which they were filled, shipped to and received by the defendants.

But, passing this evidence, as to the real character of which we can only make conjecture, were the circumstances, in other respects, sufficient to justify the jury in reaching the conclusion complained of?  The jury were properly told that in determining their verdict they could call to their aid such matters of knowledge as are possessed by mankind in general.  Do not

men generally know that one who engages in an unlawful enterprise usually makes some effort to conceal the real character of it? Would not the finding of liquors concealed about the premises of one charged with keeping them for lawful sale be a strong circumstance tending to show guilt, and, if this be true, would not the fact that the nature of the contents of the bottles was hidden by anonymous labels be evidence of equal weight? Is it not generally known that people engage in business for profit; that beverages which may be lawfully sold have names which serve to identify and distinguish them, and that they will sell better under their real names than under fictitious appellations? Men engaged in a legitimate business advertise their wares. Those who dissemble and suppress information in regard to their goods must have a powerful motive for practicing deception. What other inducement than that of concealment could there be for labeling a beverage manufactured by a brewing company with the unsuggestive title of "All Hail"?. By such designation who could imagine what remedial or other qualities the liquor possessed? Might not a jury properly infer that such name was designed and adopted for the purpose of circumventing the curious and to prevent detection through the efforts of any but the vigilant?

The defendants were arrested in November. We deduce from the testimony that they had been in business but a short time; still, they had a large stock of these beverages on hand, and a goodly supply of empty bottles. There is nothing in the evidence which would lead the jury to infer that they procured these beverages for their own use, and certainly there is no presumption that such was the fact. Indeed, the circumstance that these goods were commingled with

commodities which they avowedly had for sale might be regarded by a jury as tending to show that they were not kept for their own use, but were intended to be disposed of for profit to customers. (*Commonwealth v. Keenan*, infra.) There was no explanation given of the large quantity of "Fine Old Blackberry Cordial" which they had on hand, and which was also an intoxicating beverage; though whether it was a wine or brandy we are not advised, as the word "cordial" is not very expressive. Presumably it was a liquor which grew better with age; else it probably would not have been designated as "fine *old* blackberry."

In similar cases other courts have held that convictions upon circumstantial evidence alone should be sustained. In the case of *Commonwealth v. Keenan*, 148 Mass. 470, 20 N. E. 101, which was an indictment for maintaining a liquor nuisance and for unlawfully keeping intoxicating liquor with intent to sell, the trial court instructed the jury that the finding of an article of merchandise in a place of business where merchandise is for sale would have a tendency to show that it was there for sale. Commenting upon this instruction, the supreme court said:

"It is now argued that this was an instruction upon a matter of fact. But from the defendant's request for an instruction to the effect that the presence of the article would not tend to show that it was there for sale, it is evident that the judge's attention was directed to a different point, and that the exception was to allowing the jury to draw the inference, not to the use of words implying that the inference was the proper one.

"It is true in most cases that, when a fact in issue is to be inferred from facts proved, the court cannot instruct the jury as to probabilities or presumptions of fact, but can only determine that, if the jury draw the inference upon the presumptions which they have

learned from their experience of life, they will be warranted so far as the court knows, and will not be making a mere guess without adequate data. (*Doyle v. Boston & Albany Railroad*, 145 Mass. 386, 388, 14 N. E. 461; *Commonwealth v. Hayes*, 145 id. 289, 14 N. E. 151; *Commonwealth v. Briant*, 142 id. 463, 8 N. E. 338.)

"But the phrase 'would have a tendency to show' was not a ruling that there was a presumption of fact; it was simply the phrase which is commonly used to characterize evidence which is admissible to prove a fact in issue."

In that case there was no direct evidence of a sale of intoxicating liquor, but there was evidence that there was a considerable quantity of beer on hand, and a half-barrel of empty bottles, and that there was some sort of a contrivance to prevent surprise. The court said in conclusion: "We cannot pronounce the inference that the beer was kept for sale so little warranted by the teachings of experience as to be but a mere guess." The exceptions were overruled, and the judgment of conviction affirmed.

In *Commonwealth v. Gallagher*, 124 Mass. 29, the court held, as stated in the syllabus:

"On the trial of a complaint for unlawfully exposing and keeping for sale intoxicating liquors, evidence that the officer, on searching the defendant's premises, which consisted of a front room used as a grocery, and a back room used as a kitchen, found concealed in a table drawer and closet, in the kitchen, liquor, a measure, a tunnel, and glasses, and, in the cellar beneath the kitchen, a bottle of brandy covered with boards and dirt, is sufficient to warrant a conviction."

Slight circumstances have been held to be sufficient to prove that intoxicating liquors found on defendant's premises were kept for sale. In *Commonwealth v. Murphy*, 153 Mass. 290, 26 N. E. 860, it was proved that on the day charged in the complaint a tin pail

containing whisky was found on defendant's premises, which were frequently visited by persons other than the family of the defendant. It was also shown that on the morning of the day charged in the complaint the defendant was seen to enter several times the house opposite his own, and to return from it to his own house, and that in the house standing opposite a jug of whisky was found. Upon the question of admissibility of this latter evidence the court divided, but a majority held that it was admissible because "it was competent on the question of the intent with which he kept the liquor found in his own house," and the members of the court all agreed that "the weight of the evidence was for the jury."

In the case of *The People v. Hulbut*, 4 Denio, 133, 17 Am. Dec. 244, the court remarked :

"This disposes of all the questions made on the argument, except the objection to allowing proof that the defendant kept a bar with bottles in it. This was after evidence had been given that the defendant kept a public house. It would be strange indeed that a man may be convicted of murder upon circumstantial evidence, and yet the same kind of evidence may not be given when the trial is for selling spirituous liquors without a license. There is nothing in the objection."

In *Commonwealth v. McCullow*, 140 Mass. 370, 5 N. E. 165, there was no direct evidence of any sale of liquor, but the defendant was convicted. The verdict was approved, and on appeal the court held that the weight of the evidence was for the jury. The syllabus in the case was as follows :

"At the trial of a complaint for keeping a common nuisance, there was evidence for the government that the premises of the defendant were searched, under a warrant, and only a bottle half full of whisky was found, and a glass smelling of beer ; that the defend-

ant's mother occupied a portion of the defendant's building, where she kept house by herself, and which could be reached from the defendant's store only by passing through the tenement where the defendant's family lived; and that the mother's tenement was searched, under another warrant, at the same time as the defendant's, and two cases of lager-beer were found there and a quart of whisky. *Held*, that the defendant had no ground of exception to the admission of the evidence relating to the search of the mother's tenement and to what was found there, although the liquor taken on the warrant was afterwards returned to her by order of court.''

The case of *The State v. Baskins*, 82 Iowa, 761, 48 N. W. 809, is much in point. No syllabus was prepared by the court, but the one appearing in the reporter above cited is a fair statement of the facts and the law as set forth in the opinion. It reads:

''On the trial of an indictment for maintaining a nuisance, where it appears that officers, acting under a search-warrant, found in the house a jug partly filled with liquor, two bottles of whisky, a large number of empty bottles and some glasses which had contained beer, there is evidence to sustain a verdict of guilty, although actual sales are not shown by direct evidence.''

In *State v. Burroughs*, 72 Me. 479, it was held that bottles, glasses and measures found in defendant's shop were properly received in evidence because they were or might be implements used in unlawful traffic. ''They were admissible in evidence however obtained. Their evidential force was for the jury. They were nevertheless articles of evidence, even if procured by an unauthorized and illegal search.'' (Citing *State v. Plunkett*, 64 Me. 536; *State v. McGlynn*, 34 N. H. 422; *State v. Flynn*, 36 id. 64; *Commonwealth v. Dana*, 2 Metc. 329.)

In *State v. McGlynn*, supra, the last clause of the syllabus reads: "Where an indictment was for *keeping* for sale spirituous liquor, contrary to the statute, the fact may be proved without showing a sale or an offer or an attempt to sell." And in the decision, at page 427, the court said: "That no sale or offer or attempt to sell was shown might be a good matter of argument before the jury, but the want of such evidence could not be good ground for setting aside a verdict."

In *Commonwealth v. Atkins*, 136 Mass. 160, which was a complaint for keeping for sale intoxicating liquors, the police officers found a sugar barrel nailed up, which contained 120 bottles of lager-beer, upon defendant's premises. It had only been there about fifteen minutes. The barrel had not been unheaded or opened, and none of the beer had been offered for sale or sold. The court in its opinion ruled:

"Under the instruction given, the jury must have found that the defendant had the liquor with intent to sell the same in violation of law, and the question of intent was one of fact for them. (*Commonwealth v. Goodman*, 97 Mass. 117.) The evidence is not reported, but even if it was thus kept on but a single occasion, or for but a short time, it was sufficient, if satisfactory to them. (*Commonwealth v. Cleary*, 105 Mass. 384."

In *Commonwealth v. Welch*, 140 Mass. 372, 5 N. E. 166, which was a prosecution for keeping liquor with the intent to sell unlawfully, the defendant asked the trial judge to instruct the jury that if they found there was no evidence that the defendant had sold any of the liquor she was entitled to an acquittal. "The judge refused so to rule, and instructed the jury that if they were satisfied, beyond a reasonable doubt, that the defendant kept intoxicating liquors with intent to sell them, as stated in the complaint, then they would

The State v. Schoenthaler.

be justified in finding the defendant guilty, although there was no evidence that she exposed them for sale. The jury returned a verdict of guilty, and the defendant alleged exceptions" and appealed the case. In the supreme court, the entire opinion is in the following words : "The instructions given at the trial were correct. The judgment in *Commonwealth v. Atkins*, 136 Mass. 160, is decisive of this case. *Exceptions overruled.*"

Upon diligent search, we have been unable to find, in the works of any text-writer or the decisions of any court of last resort, authority for holding that a conviction had upon circumstantial evidence alone in a case like the present is not authorized by well-known and universally recognized rules of evidence. The trial court, in consideration of the evidence in the record, as well as that which is referred to but not described therein, and which was exhibited to the jury, approved this verdict, to which fact, on account of the aforesaid omission in the record, we feel bound to attach even greater importance than is ordinarily due it. This court is of opinion that it has no right to disturb or set aside the verdict of the jury or the judgment based thereon.

The judgment of the court below is affirmed.

JOHNSTON, CUNNINGHAM, GREENE, JJ., concurring.