**INDEPENDENT GIN & WAREHOUSE CO. et al. v. DUNWOODY, Commissioner of Agriculture and Industries of Alabama, et al.**

District Court, M. D. Alabama, N. D., at Montgomery. October 23, 1928.

No. 416.

Steiner, Crum & Weil, of Montgomery, Ala., and Martin, Thompson, Foster & Turner, of Birmingham, Ala., for plaintiffs.

A. A. Evans, Asst. Atty. Gen. of Alabama, for defendants.

CLAYTON, District Judge. Plaintiffs ask for restraining order against the defendants, and for the convening of three judges to hear the case on application for interlocutory injunction. The matter was fully argued by the attorneys of the respective parties.

The case presents the question whether or not a restraining order should be granted, and, if that be refused, then whether or not an order should be made to convene a court of three judges to pass upon the application for interlocutory injunction. I find no analogous case. Therefore I think it proper to state my views.

The plaintiffs challenge the Alabama statute[1] regulating warehouses, warehousemen, weighers, graders, inspectors, samplers, or classifiers where cotton is stored for safekeeping, and for weighing, grading, sampling, or classing pending such time as the cotton may go into interstate commerce, for, as it is contended, the act licensing and regulating warehouses in Alabama conflicts with the commerce clause of the Constitution of the United States.

It is sometimes difficult to determine whether a given piece of legislation by a state is an invasion of the exclusive power delegated to Congress over commerce between the states, or whether the state law may not properly come under the police power of the state. Of course it is academic to say that the state cannot hamper the freedom of commerce between the states. Further, it is to be observed that the police power must not be interfered with, unless in the exercise of such the state attempts to restrict the freedom of interstate or foreign commerce. Within the limits of the powers reserved to the states, the inherent regulatory authority of the state must be preserved.

It is insisted that the act of Congress which provides for the licensing and regulation of warehouses as a federal agency in the matter of interstate commerce precludes the state from the licensing and regulation of such warehouses, as the Alabama act is designed to do. The congressional enactment provides (Section 269, USCA tit. 7, p. 109) that "nothing in this chapter shall be construed to conflict with, or to authorize any conflict with, or in any way to impair or limit the effect or operation of the laws of any State relating to warehouses, warehousemen, weighers, graders, inspectors, samplers, or classifiers; but the Secretary of Agriculture is authorized to co-operate with such officials as are charged with the enforcement of such state laws in such states and through such co-operation to secure the enforcement of the provisions of this chapter; nor shall this

---

[1] Section 366, p. 442, Acts Ala. 1919; section 361, Schedule 114, p. 436.

chapter be construed so as to limit the operation of any statute of the United States relating to warehouses or warehousemen, weighers, graders, inspectors, samplers, or classifiers in force February 23, 1923, in the District of Columbia or in any territory or other place under the exclusive jurisdiction of the United States."

Therefore it seems plain that I must comply with the spirit and announced purpose of the act of Congress, and must not "in any way to impair or limit the effect or operation of the laws of any state relating to warehouses," etc., but must leave it to the Secretary of Agriculture, "to co-operate with such officials as are charged with the enforcement of such state laws in such states and through such co-operation to secure the enforcement of the provisions of this chapter."

It is to be borne in mind that the chief objection urged by the plaintiffs, who are warehouse corporations, is that the state cannot, in view of the act of Congress, exact the small or not unreasonable license tax demanded of them, because, as it is contended, the federal act, especially in view of the federal license and the regulations authorized, constitutes a contract or permit given by the government of the United States to the warehouse corporations which excludes the state from licensing or interfering in any manner or having any supervision over the business of the so-called "federal warehouses" in the state of Alabama.

The payment of the revenue tax to retail whisky in the old days, or to sell cigars or tobacco, exacted by the government, was not or is not a contract, and afforded and does not afford any obstacle whereby the state could be prevented from legislating and controlling, or even prohibiting, the sale of liquor or tobacco. About this it is not necessary to say more.

In this case, what have the state officials done that would justify the interference of a federal court of equity? It does not appear that anything has been done, or that anything is threatened, except the exaction of a small license fee from the plaintiffs for carrying on the warehouse business in the state, and, probably, for a reasonable inspection or examination by the state authorities of the methods and conduct of the business done by warehousemen in Alabama, such as testing the scales wherewith the farmer's cotton, as well as that of the shipper is weighed. It is hardly necessary to mention other things that the state may do to prevent the chousing of cotton producers and other patrons of warehouses. There is nothing strange or arbitrary about that.

It cannot be fairly said that the regulatory act of Alabama restrains or interferes with interstate commerce. So far as is shown, the state is co-operating in the spirit of the act of Congress with the federal authorities themselves, and that such authorities are co-operating with the state in carrying out the very purposes of the act of Congress. In short, the legislation of Alabama seems to be in harmony with the act of Congress, in letter, spirit, and purpose, and that such state act is well designed for the benefit and protection of those who store cotton in warehouses and have it there weighed, sampled, and graded or classed.

My conclusion is that the temporary restraining order must be denied, because it is not shown that the case is one authorizing the extraordinary process of a temporary restraining order, and, by the same token, I think it is manifest that an interlocutory injunction would not be issued by a court of three judges. In my opinion, it would be useless to go to the inconvenience and expense of convening a court of three judges to determine that injunction should not issue; for, as I see it, the bill does not present a case for such equitable cognizance or interference.

It seems to me that my ruling is not arbitrary; at any rate, if the plaintiffs are aggrieved, they perhaps can apply for mandamus. Or it may be better to dismiss the bill for the want of equity; thereby from my action doubtless appeal will be afforded. At this time I deny the temporary restraining order; and, having made such denial, I must refuse to convene a three-judge court to pass upon the question of interlocutory injunction. It will be so ordered.

It is to be noted that the attorneys of the parties have made a stipulation to preserve the status quo of the matter until the questions passed upon by me may undergo review by higher judicial authority.