**UNITED DRUG CO. v. GRAVES, Governor of Alabama, et al.**

District Court, M. D. Alabama, N. D. at Montgomery.   September 25, 1929.

No. 417.

Joseph P. Mudd, of Birmingham, Ala., for plaintiff.

Charlie C. McCall, Atty. Gen., and A. A. Evans, Asst. Atty. Gen., for defendants.

CLAYTON, District Judge. The plaintiff is engaged in the manufacture and sale of medicines, drugs, and drug sundries, and its business in interstate and foreign commerce amounts annually to more than $27,000,000, a portion of which consists of the manufacture and sale of certain insecticides and fungicides put up in packages bearing plaintiff's trade-mark, alleged to be of great value. The manufacturing is done in part in the city of Boston, Mass., and in part in the city of St. Louis, Mo. A large part of the plaintiff's business consists in selling and shipping its products to customers in Alabama. The products are labeled and shipped in interstate and foreign commerce subject to the provisions of the statute known as the Insecticide Act, 36 U. S. Stat. at L. pp. 331, 335 (title 7, c. 6, USCA [sections 121–134]).

The Legislature of the state on August 24, 1927, adopted the Agricultural Code of Alabama (Gen. Acts 1927, p. 324), article 18 of which embraces sections 159 to 169, both inclusive. Section 168 is in these words:

"*Statement of Chemical Analysis.*—Any manufacturer of an insecticide or fungicide, before the same is offered for sale in Alabama, shall file or cause to be filed with the Commissioner, for each and every brand of insecticide and fungicide, a certified statement of the brand name and of the chemical analysis, showing the active or inert constituents as required by Section 166 of this Article (provided that whenever any inert constituent is claimed to exert especial attractions it shall be considered as active and its nature and percentage shall be filed with the said Commissioner and shall be stated on the label of the product), in the form of an application for registration of the brand. Said application shall be accompanied by a copy of the label proposed for use in connection with the sale of said brand, and when said Commissioner shall so request, with a sealed package containing not less than one pound of the insecticide or fungicide. The manufacturer filing or causing to be filed such certificate, shall accompany the application with and shall pay annually to the Commissioner a fee of Ten ($10.00) Dollars on each and every brand prepared and offered for interstate shipment, and a fee of Five ($5.00) Dollars per brand for such brands as are not offered for interstate shipment (except that said fee shall not be assessed for registration of an insecticide or fungicide consisting of a single unmixed organic matter and not containing any added inorganic matter or mineral chemical, provided that a complete chemical analysis, showing the active or inert constituents and the proportions of same, of said insecticide or fungicide is given in, and as part of the certificate required under this Section). Whenever any person shall have filed said certificate and paid said registration fee, no other person shall be required to file such statement or pay such fee. If after a brand of insecticide or fungicide has been registered, it is later discovered that the brand was registered in violation of the provisions of this Article, the Commissioner shall have authority to cancel the registration."

The plaintiff complains that the $10 fee provided in the section quoted applies to its business in interstate commerce, and "accordingly charges the fact to be, that said statutory provision of the State of Alabama casts an unnecessary and discriminatory burden upon interstate commerce and that, by compelling plaintiff to pay said fees in order to protect the good will and value of its business, would deny to plaintiff the just and equal protection of the laws and would deprive plaintiff of its property without due process of law, all of which is in violation of the Constitution of the United States and of the Fourteenth Amendment thereof."

The Commissioner of Agriculture and Industries, on or about September 6, 1928, sent to the plaintiff forms for making report under said statutory provision, together with a copy of the sections of the statute, accompanied by a threat, as plaintiff alleges, of prosecution. On receipt of the forms and literature, the plaintiff telegraphed the Attorney General of the State for assurance that such annual charges and penalties would not be enforced against it; and also made personal application for such assurance. The Attorney General declined to give assurance or to express an opinion that the statutes or any part thereof are void.

The prayer is for restraining order to prohibit the defendants from endeavoring because of the nonregistration of the plaintiff's insecticides or fungicides, or because of the

nonpayment of any fee in respect thereto, from interfering with the plaintiff or any person selling or offering for sale any insecticide or fungicide manufactured or sold by the plaintiff. And, further, the prayer is for the convening of a three-judge court and for injunction making good the restraining order prayed for.

In conformity with the stipulation of the parties, the cause is now submitted to the court for decretal order.

The plaintiff is a foreign corporation and has not qualified under the Alabama statutes to do business in the state. It does not manufacture any insecticides or fungicides in Alabama, and does not keep any of such articles in Alabama for sale. It does no intrastate business in Alabama. All of its sales to residents in the state of Alabama are made in interstate commerce; that is, insecticides and fungicides manufactured outside of the state of Alabama and shipped into the state by the plaintiff to the purchaser in the state under and subject to the provisions of the Insecticide Act, supra.

The complaint is that under the provisions of article 18 of the Agricultural Code it is made a misdemeanor to offer for sale in the state any brand of insecticide or fungicide obtained through interstate commerce unless an annual fee of $10 shall have been paid to the state; and the contention is that this burdens the plaintiff's interstate business, and would force the plaintiff, in order to protect its good will, to submit to unlawful exactions.

■ The plaintiff, not having complied with the Alabama statute, is not qualified to carry on business in this state; and of course the court takes judicial notice of the state statute and of its construction by the state court of last resort. Section 7209, Code of Ala. 1923, vol. 3, p. 566; Hurst v. F. W. Wheel Co., 197 Ala. 10, 72 So. 314; American Amus. Co. v. East L. C. Co., 174 Ala. 526, 56 So. 961.

■ The plaintiff's conclusions of law, if not correct, cannot be held to be admitted as correct on the motion to dismiss the bill. Such motion fills the office of a general demurrer, admitting the allegations of fact; but the motion does not admit the incorrect conclusions of law. Hopkins, New Fed. Eq. Rules (6th Ed.) rule 29, and authorities cited in footnotes, dealing with various aspects of the rule.

■ It seems plain to me that the plaintiff is not engaged in manufacturing or selling in Alabama for which the payment of the fee of $10 is required, for examination of section 159, art. 18, of the Alabama Agricultural Code shows the proper interpretation of that article. There it is said that: "The provisions of this Article shall govern the manufacture, sale, offering for sale, or other disposition of insecticides, fungicides or ingredients thereof, and other remedies or materials used in the control or eradication of insect pests and plant diseases within the State of Alabama."

My conclusion is that the provisions of article 18 apply only to insecticides manufactured in Alabama or those offered for sale in Alabama in the domestic commerce of the state, and that they do not have any application to the activities of the plaintiff as presented in this bill. All that the plaintiff does is to supply its products manufactured outside the state to residents of Alabama and in interstate commerce. A comparison of the Alabama statute and the act of Congress on the same subject evidences that the state statute is in some sort complementary to the federal act. Admittedly, the Congress had no authority to deal with the manufacture or sale of insecticides or fungicides within the state, and did not attempt to legislate with reference to intrastate business. Rightful authority was exercised in the manufacture and sale of insecticides, etc., in the District of Columbia and the territories, and with reference to such products when shipped in interstate commerce. The Alabama statute has no application to insecticides or fungicides except such as are manufactured or prepared in Alabama or such as are offered for sale in Alabama in its domestic commerce. For, plainly, wherever the word "manufacturer" is used in article 18, it means manufacturer in Alabama. For instance, the provision in section 168 of article 18, and that alone, deals with the matter of annual tax or fee, of which the plaintiff complains. The language is: "The manufacturer filing or causing to be filed such certificate, shall accompany the application with and shall pay annually to the Commissioner a fee of Ten ($10.00) Dollars on each and every brand prepared and offered for interstate shipment, and a fee of Five ($5.00) Dollars per brand for such brands as are not offered for interstate shipment," etc.

No construction can be indulged to justify the idea that the legislative intent of this provision was to apply to insecticides and fungicides prepared and offered for interstate shipment in a state other than Alaba-

ma. The fee of $10 is not exacted except where the product is prepared in Alabama and there offered for interstate shipment. It does not seem possible to attribute the intent of the Legislature to have the provisions apply to products prepared and offered for interstate shipment either in Massachusetts or in Missouri. The Legislature of Alabama has not attempted to regulate or interfere with the manufacture of or the offering for interstate shipment products manufactured in other states and there shipped in interstate commerce.

■■ This corporation, foreign to Alabama, is without authority to prepare in the state of Alabama its products for interstate shipment. It follows that under no circumstances could the plaintiff be chargeable with the payment of $10 annual fee provided in said article 18; and this is so upon the principle that one who does not belong to the class which might be injured by a statute cannot raise the question of its validity. Red River Valley Nat. Bank v. Craig, 181 U. S. 548, 558, 21 S. Ct. 703, 45 L. Ed. 994.

Perhaps the language is not as clear as it might have been, but, obviously, it announces an intention within the legislative competency. For clarity, transpose the words "within the State of Alabama" to the proper place in the sentence, and we have the following: "The provisions of this Article shall govern the manufacture, sale, or offering for sale or other disposition, within the State of Alabama, of insecticides, fungicides or ingredients thereof, and other remedies or materials used in the control or eradication of insect pests and plant diseases."

■ It must be conceded that the purpose announced in the Alabama statute is entirely outside of the scope of federal authority and does not impinge upon the federal statute. Things and activities in the state of Alabama before the product enters into the commerce of the state are dealt with.

Amplifying, by way of illustration, so much of the federal statute as is necessary, is quoted, and is in these words:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled. That it shall be unlawful for any person to manufacture within any Territory or the District of Columbia any insecticide, Paris green, lead arsenate, or fungicide which is adulterated or misbranded within the meaning of this Act; and any person who shall violate any of the provisions of this section shall be guilty," etc. Section 1.

"Sec. 2. That the introduction into any State or Territory or the District of Columbia from any other State or Territory or the District of Columbia, or from any foreign country, or shipment to any foreign country, of any insecticide, or Paris green, or lead arsenate, or fungicide which is adulterated or misbranded within the meaning of this act is hereby prohibited; and any person who shall ship or deliver for shipment from any State or Territory or the District of Columbia to any other State or Territory or the District of Columbia, or to a foreign country, or who shall receive in any State or Territory or the District of Columbia from any other State or Territory or the District of Columbia, or foreign country, and having so received, shall deliver, in original unbroken packages, for pay or otherwise, or offer to deliver, to any other person, any such articles so adulterated or misbranded within the meaning of this chapter, or any person who shall sell or offer for sale in the District of Columbia or any Territory of the United States any such adulterated or misbranded insecticide, or Paris green, or lead arsenate, or fungicide, or export or offer to export the same to any foreign country, shall be guilty of a misdemeanor," etc. 7 USCA §§ 125, 126.

There was no attempt on the part of Congress to legislate within the field covered by article 18, for it is plain that the operation of such article is in cases where the state and not the federal government had the authority to legislate.

In passing, it is noted that what constitutes adulteration or misbranding is defined in the same way in the federal and in the state act. The scope of the federal act is interstate and foreign commerce, while the Alabama act is in pursuance of the reserved power of the state over its purely domestic affairs.

■ My conclusion is that the provisions of the Alabama act do not affect the rights of the plaintiff; and that article 18 of the Agricultural Code is not hostile to the Fourteenth Amendment, for the same burden is laid upon every one engaged in intrastate commerce. Furthermore, that no burden is imposed upon the plaintiff, for the plaintiff is so circumstanced as not to come under any of the provisions of article 18. Therefore, the temporary restraining order is denied.

And, as there is no justifying reason for the convening of a three-judge court, the prayer for the same is denied.

█ If I am in error in refusing to convene a three-judge court, the question can be reviewed; and, apparently, mandamus is the proper remedy. Ex parte Metropolitan Water Co. of W. Va., 220 U. S. 539, 31 S. Ct. 600, 55 L. Ed. 575; Ex parte Buder, 271 U. S. 461, 46 S. Ct. 557, 70 L. Ed. 1036.

█ I do not think the instant case comes under section 380, title 28, USCA (Jud. Code, § 266, as amended). It seems that the statute for the convention of a three-judge court applies to cases in which preliminary injunction is sought in order to restrain the enforcement of a state enactment on the ground of its unconstitutionality; and that the reference in the statute, section 380, title 28, USCA, requiring a three-judge tribunal, is for the purpose of considering an asserted conflict with the federal Constitution, and that the question of unconstitutionality must be a substantial one. In my opinion, the contention that article 18 is in conflict with the Federal Constitution is without foundation, although the allegations of fact of the plaintiff's bill be taken as true. For, in my judgment, the Alabama statute is not inimical to any provision of the Federal Constitution. Certainly, if this conclusion is correct, it is unnecessary to incur the expense and inconvenience of having a three-judge tribunal. Accordingly, the prayer for the convention of a three-judge court should not be granted.

It is not deemed necessary to pass on the motion to dismiss the bill at this time. See note, Hopkins, New Fed. Eq. Rules (6th Ed.) p. 194.

Appropriate order entered.