## CHAPMAN v. BOYNTON, Atty. Gen. of Kansas, et al.

### No. 1734.

District Court, D. Kansas, First Division. May 13, 1933.

J. H. Brady, N. E. Snyder, and Frank Thompson, all of Kansas City, Kan., for plaintiff.

Roland Boynton, Atty. Gen., and Dunkin Kimble, Asst. Atty. Gen., for defendants.

HOPKINS, District Judge.

This controversy involves the validity of the "Bone Dry" intoxicating liquor law of Kansas.

Plaintiff seeks a restraining order against the defendants, and asks for the assembling of a three-judge court to hear the case on application for an interlocutory injunction.

Roland Boynton, Attorney General for Kansas, has filed a motion to dismiss the bill for want of equity and lack of jurisdiction of this court to hear the cause.

The plaintiff's bill prays that the defendants be enjoined from enforcing the intoxicating liquor laws of Kansas (article 21, chapter 21, of the Revised Statutes of the state of Kansas 1923 [21—2101 et seq.]), in so far as such laws prohibit the sale of malt beverages containing not more than 3.2 per centum of alcohol by weight. Plaintiff alleges and contends that he has secured a dealer's permit in fermented liquors from the collector of internal revenue for the District of Kansas, and that, in so far as the intoxicating liquor laws of Kansas prohibit the sale of such malt beverages, they are unconstitutional and void, being repugnant to the Fourteenth Amendment and to clause 2 of article 6 of the Constitution of the United States.

Plaintiff's bill shows that all of the parties to the action are residents and citizens of the state of Kansas.

The defendants contend that the plaintiff's bill fails to present a substantial federal question, and, since there is no diversity of citizenship shown on the face of the bill, the court is without jurisdiction to hear the cause, and, such being the case, the District Judge may rule on the motion to dismiss the plaintiff's bill without convening a three-judge court for that purpose.

Does the plaintiff's bill on its face disclose a lack of jurisdiction? And, if there is a failure of jurisdiction, is it necessary to convene a three-judge court for the purpose of dismissing it?

It appears plain, there being an absence of diversity of citizenship, that, if the bill fails to present a substantial federal question, this court is without jurisdiction, and the bill must fall of its own weight. There is, therefore, but one question before this court, Does the plaintiff's attack upon the constitutionality of the intoxicating liquor laws of the state of Kansas present a substantial federal question in view of the previous decisions and construction of the intoxicating liquor laws of the state of Kansas and of the Federal Prohibitory Act? This, I think, must be answered in the negative.

The constitutionality of the intoxicating liquor laws of the state of Kansas has been determined by her Supreme Court and by the Supreme Court of the United States. In

Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, it was held:

"The Prohibition Law of the State of Kansas is not in conflict with that clause of the Fourteenth Amendment of the Constitution of the United States, which provides that

" 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law.'

"It belongs to the legislative department to exert what are known as the police powers of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety—subject to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the Constitution." Syl. pars. 1 and 3.

See, also, State v. Sherman, 81 Kan. 874, 107 P. 33, 135 Am. St. Rep. 403. Also appendix attached to this opinion, giving digest of territorial and state laws of Kansas.

█ The fact that Congress has seen fit to liberalize the federal prohibitory liquor laws authorized by the Eighteenth Amendment to the Constitution by allowing an increased alcoholic content of beer does not, in my opinion, affect the existing liquor laws of the several states. The National Prohibition Act (27 USCA § 1 et seq.) passed by Congress in 1919 provided that intoxicating liquors within the meaning of the act were such liquors that contained in excess of one-half of 1 per cent. of alcohol by volume. That act was held to be constitutional. The states have concurrent jurisdiction with the federal government to enforce the Eighteenth Amendment to the Constitution by appropriate legislation.

The Eighteenth Amendment specifically provided that: "The Congress and the several States shall have concurrent power to enforce this Article by appropriate Legislation."

█ The constitutionality or validity of a state's statute is not affected by the mere fact that it has a broader scope than the provisions of the National Prohibition Act upon the same subject. Van Oster v. Kansas, 272 U. S. 465, 47 S. Ct. 133, 71 L. Ed. 354, 47 A. L. R. 1044.

A similar question was under consideration in McCormick & Co. v. Brown, 286 U. S. 131, 52 S. Ct. 522, 527, 76 L. Ed. 1017, in which the court quoted from United States v. Lanza, 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314, as follows: "In effect the second section of the Eighteenth Amendment put an end to restrictions upon the state's power arising out of the federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the amendment took from the states all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it. * * * We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."

█ The McCormick Case, supra, also laid at rest the plaintiff's claim that his right to sell malt beverages in Kansas in opposition to the Kansas intoxicating liquor laws has been strengthened by the fact that he has obtained from the collector of internal revenue for the District of Kansas a retail dealer's permit in fermented liquors. It was there held that the fact a federal permit had been issued for the sale of certain preparations containing alcohol did not prevent the state from placing additional restriction upon the sale of such preparations.

█ The intoxicating liquor law of Kansas provides that:

"It shall be unlawful for any person to directly or indirectly manufacture, sell, barter, or give away, furnish or keep or have in his possession for personal use or otherwise, any spirituous, malt, vinous, fermented or other intoxicating liquors. * * * *" R. S. 21—2101, Laws 1917, ch. 215, § 1.

"All liquors mentioned in Laws of 1917, ch. 215, sec. 1, as amended, shall be construed and held to be intoxicating liquors within the meaning of this act." R. S. 21—2109.

Malt and fermented liquors being specifically mentioned in the section, beer containing 3.2 per cent. alcohol must necessarily fall within the statutory definition of intoxicating liquors.

In City of Topeka v. Heberling, 134 Kan. 330, 5 P.(2d) 816, an instruction that, as a

46

matter of law, "home brew," "when containing three or more per cent. of alcohol, would be considered as intoxicating," was upheld by the Kansas Supreme Court. The same court has held that beer is presumed to be intoxicating under the Kansas prohibitory liquor law. State v. May, 52 Kan. 53, 34 P. 407.

■■ The right to regulate the use, or to prohibit the use, manufacture, or sale, of liquor within a state, is a valid exercise of the police power of that state, the exercise of which is reserved to the several states by the Constitution of the United States. The exercise of a valid police power by a state violates none of the property rights secured under the Fourteenth Amendment to the Constitution of the United States. These propositions are so well settled that citations of authority are hardly necessary. However, see McCormick & Co. v. Brown, 286 U. S. 131, 52 S. Ct. 522, 76 L. Ed. 1017; Crane v. Campbell, 245 U. S. 304, 38 S. Ct. 98, 62 L. Ed. 304; Butler v. Perry, 240 U. S. 328, 36 S. Ct. 258, 60 L. Ed. 672; Eberle v. Michigan, 232 U. S. 700, 707, 34 S. Ct. 464, 58 L. Ed. 806; Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 201, 33 S. Ct. 44, 57 L. Ed. 187; and Chicago, B. & Q. R. Co. v. McGuire, 219 U. S. 549, 568, 31 S. Ct. 259, 55 L. Ed. 339.

■ The plaintiff seeks to raise a federal question by alleging that the "Bone Dry Law" of Kansas is unconstitutional. It is argued in this connection that the Kansas law is in conflict with the National Prohibition Act and the recent Revenue Act removing from the operation of the National Prohibition Act the sale of 3.2 per cent. beer. But plaintiff apparently overlooks the rule clearly stated in Colonial Drug & Sales Co. v. Western Products Co. (C. C. A.) 54 F. (2d) 216. There it was said that this question has been so often decided that it has ceased to be a federal question. That rule is applicable and controlling in the instant case. The identical question has been decided many times by the United States Supreme Court; that is to say, a state may legislate against intoxicating liquors as strictly as it reasonably desires. The fact that it goes farther than the acts of Congress makes no legal difference. Congress may legislate as it desires within its own field, and the state may legislate as it desires within its own field, so long as the legislation does not attempt to authorize that which the Eighteenth Amendment prohibits. United States v. Lanza, 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314; Vigliotti v. Pennsylvania, 258 U. S. 403, 42 S. Ct. 330, 66 L. Ed. 686. Since this question has been definitely decided, it ceases to be a federal question.

While it may not be necessary to a decision in this case, it may be observed in passing that the federal act (27 USCA § 64a et seq.), allowing the manufacture and sale of 3.2 per cent. beer prohibits its sale in states or territories where the manufacture, sale, or transportation of fermented malt or vinous liquor containing 3.2 per cent. alcohol is prohibited by law.

Section 6 of the act (27 USCA § 64j) provides that: "In order that beer, ale, porter, wine, similar fermented malt or vinous liquor, and fruit juice, containing 3.2 per centum or less of alcohol by weight, may be divested of their interstate character in certain cases, the shipment or transportation thereof in any manner or by any means whatsoever, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country, into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which fermented malt or vinous liquor or fruit juice, is intended by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited. * * *"

Section 7 (27 USCA § 64k) provides that: "Whoever orders, purchases, or causes beer, ale, porter, wine, similar fermented malt or vinous liquor, or fruit juice, containing 3.2 per centum or less of alcohol by weight, to be transported in interstate commerce, except for scientific, sacramental, medicinal, or mechanical purposes, into any State, Territory, or the District of Columbia, the laws of which State, Territory, or District prohibit the manufacture or sale therein of such fermented malt or vinous liquor or fruit juice for beverage purposes, shall be fined. * * *"

From which it would appear that the sale of 3.2 per cent. beer for transportation in Kansas would be a violation of the federal statute.

■ Under the Judicial Code § 266, as amended (28 USCA § 380), the question of the unconstitutionality of a state statute must be a substantial one to warrant the in-

tervention of a three-judge court. If it appears upon the face of the bill that the question is not a substantial one, the convening of a three-judge court is not warranted. Independent Gin & Warehouse Co. v. Dunwoody (D. C.) 30 F.(2d) 306; United Drug Co. v. Graves (D. C.) 34 F.(2d) 808. If it clearly appears upon the face of the bill that there is no substantial federal question involved, it would be useless to go to the inconvenience and expense of convening a court of three judges to determine that an injunction should not issue.

Plaintiff cites and relies upon the case of Ex parte Northern Pac. R. Co., 280 U. S. 142, 50 S. Ct. 70, 74 L. Ed. 233, in support of his contention that a single District Judge is without jurisdiction to dismiss the bill. This decision is not controlling. The federal District Judge to whom that case was presented issued a temporary restraining order pending a final determination by a three-judge court upon the merits as to whether or not an interlocutory injunction should be issued. Having granted a temporary restraining order, he had already committed himself to the fact that there was a substantial federal question involved, and, of course, was without jurisdiction to hear either the motion to dissolve the temporary restraining order or the motion to dismiss the bill on its merits.

▆ In conclusion, it may be observed that it has been repeatedly held that the Kansas intoxicating liquor laws are not in violation of the Constitution of the United States. It has been specifically provided that the states have concurrent power with Congress to pass their own legislation enforcing the Eighteenth Amendment to the Constitution of the United States. It has been held by the Supreme Court of the United States that each state, in determining what shall be an offense against its peace and dignity, is exercising its own sovereignty, not that of the other. It would, therefore, in my opinion, be useless to go to the inconvenience and expense of convening a three-judge court for the purpose of again citing the many decisions on this question.

The application for a temporary restraining order and the application to convene a three-judge court to pass upon the question of the interlocutory injunction will therefore be denied, and the bill be dismissed.

### Appendix.

Prohibition of the beverage liquor traffic has had a progressive development in Kansas from initial regulation of the saloon and tavern down to and including "bone-dry." The Supreme Court of Kansas, perhaps more than any other court of last resort, has interpreted the successive acts of the Legislature and dealt with the liquor question in all its numerous phases. This note contains a digest of such laws and the principal decisions of the Supreme Court of Kansas, pertaining thereto.

### Territorial Laws.

Statutes 1855, c. 53, § 29: Crimes and Punishments. "Every person who shall erect or keep a booth, tent, stall or other contrivance for the purpose of selling or otherwise disposing of any wine, or spirituous or fermented liquors, or any drink of which wine, spirituous or fermented liquors form a part, within one mile of any camp or field-meeting for religious worship, during the time of holding such meeting, shall, upon conviction, be adjudged guilty of a misdemeanor, and punished by fine not exceeding ten dollars. * * * Chap. 53, Sec. 34. Every person who shall expose to sale any goods, wares or merchandise, or shall keep open any ale or porter house, grocery, or tippling shop, or shall sell or retail any fermented or distilled liquor, on the first day of the week, commonly called Sunday, shall, on conviction, be adjudged guilty of a misdemeanor and fined not exceeding fifty dollars."

Statutes 1855, c. 64, provided that a special election be held on the first Monday of October, 1855, and on the first Monday of October, every 2 years thereafter, in each municipal township in every county in the territory, and in each incorporated city or town to take the vote of the people upon the question whether dramshop and tavern licenses should be issued in the township or town for a period of 2 years thereafter; that, upon such election being held, it should be the duty of the county tribunal having control of the county business for the several counties in the territory to examine, ascertain, and adjudge in what township, or incorporated cities, licenses should be issued; that, before any licenses should be issued to any person applying for the same, such person should present to the tribunal a petition signed by a majority of the householders of the township, or of the city block or square of the town in which it is to be kept, recommending the applicant as a fit person to keep the same; that a tax should be levied for every license granted of not less than $10 nor more than $500 for county purposes; that every person operating without a license should be fined not less than $100 for each offense. Any person selling to slaves without the consent of the owner was deemed guilty of a misdemeanor. Any person selling liquor on Sunday should be guilty of a misdemeanor, and in addition should forfeit his license for a period of 2 years; that, before any person should be licensed as a dramshop keeper, he should execute a bond in the sum of $2,000, conditioned that he would not violate the provisions of the act.

Statutes 1855, c. 77, provided that no liquor should be sold within one mile of the Shawnee Manual Labor School during the sitting of the then Legislative Assembly, and any person violating the act should be deemed guilty of a misdemeanor and fined not less than $50 or imprisoned not more than 60 days.

Statutes 1855, c. 84, § 1, provided a fine of not less than $200 nor more than $500 for selling liquor to an Indian and imprisonment not less than one month nor more than six in the county jail. Sections 2 and 3 provided: "If any person shall introduce or attempt to introduce any spirituous liquors or wine into the Indian country, except such supplies as shall be necessary for the officers of the United States and troops of the service, under the direction of the war department, such person shall forfeit and pay a sum not exceeding five hundred dollars nor less than two hundred dollars, and be imprisoned as in the last section specified; and if any sheriff, constable, justice of the peace, or other civil officer of this territory has reason to suspect or is informed that any person is about to introduce or has introduced any spirituous liquors or wine into the Indian country, in violation of this act, it shall be lawful for such officer to cause the

boat, stores, packages and places of deposit of such person to be searched, and if any such spirituous liquors or wines are found either in the Indian country, or near on the borders thereof, as show an evident intention to carry the same into the Indian country, to cause the same to be destroyed, and also to hold to bail or commit the party searched."

"Any person who shall, within the Indian country, set up or continue any distillery or manufactory of ardent spirits, he shall, upon conviction be subject to a fine of not less than two hundred nor more than five hundred dollars, and not less than one nor more than six months' imprisonment in the county jail." Any Indian found guilty of violation of the above terms shall be subject to one-fourth the penalty prescribed. An Indian shall be a competent witness in any trial under this act.

Laws 1859, c. 91, provided that, before any license be issued to any person for the purpose of operating a dramshop in any township, a petition signed by a majority of the householders of the ward must be presented to the governing body of the town, recommending such person as a fit person to operate the same. Dramshop, tavern keepers and others who came under this act were required to pay a license fee of from $50 to $500 per year. Any person selling intoxicating liquors without a license was to be fined $100 for the first offense while more severe penalties were provided for subsequent offenses. It further provided fines and for the revocation of licenses for the selling of intoxicating liquors on Sundays, Fourth of July, and other stated days. Dramshop keepers were further required to execute bond in the sum of $2,000 that they would not sell to minors, etc. Further provision was made that it should be unlawful for any person or persons by agent or otherwise to sell intoxicating liquors to persons intoxicated or who are in the habit of becoming intoxicated or to married men against the known wishes of their wives. All places where liquor was sold in violation of the act were declared to be a nuisance, and might be abated. It provided a fine of $5 for intoxication. Any person who caused the intoxication of another was liable for reasonable compensation to any person who cared for such intoxicated person. Dependents of any intoxicated person were given the right to bring suit for damages actually sustained by reason of such intoxication against the person so selling the intoxicating liquor. The giving away of intoxicating liquor or other devices or shifts to evade the provisions of this act were to be deemed an unlawful sale of liquor. The act further provided methods of procedure and stated the act should not apply to cities over 1000 inhabitants; such cities had full power to regulate licenses and dispose of the proceeds thereof.

Laws 1860, c. 73, provided that any person who sold liquor to the Indians under any circumstances, unless directed by a physician, should be fined not less than $5 nor more than $500 or imprisoned not less than one·month nor more than six months in the county jail.

## State Laws.

Comp. Laws 1862, c. 114, provided that any person directly or indirectly selling liquor to an Indian should be deemed guilty of a misdemeanor.

Laws 1867, c. 56, was an act amendatory of the act passed February 11, 1859, providing in substance that, before any dramshop license should be granted to the applicant, the tribunal transacting the county business should be in receipt of a petition signed by a majority of the residents of the township, both male and female over the age of 21 years.

Laws 1867, c. 81, provided that any person who directly or indirectly sells intoxicating liquors in any unorganized county of the state of Kansas should be fined not less than $100 nor more than $1,000, or be confined in the county jail for a term of not less than 4 nor more than 12 months or both. Also that any person giving information that should lead to conviction should be entitled to a sum not less than $50 nor more than $200 to be paid out of the fines collected under the provisions of the act.

Gen. St. 1868, cc. 18 and 19, granted to cities of the first and second classes power to restrain, prohibit, and suppress tippling shops, disorderly houses, and other like resorts.

Gen. St. 1868, c. 35: The tax for running a dramshop was raised from $50 to $500 to $100 to $500. Penalty for selling intoxicating liquor on Sunday was changed to from $25 to $100, or imprisonment from 10 to 30 days, and, in addition, the license of such dramshop keeper forfeited for a period of 2 years after conviction; that any person who sold liquor or gave it away to one whom he knew or had been given notice was an habitual drunkard, or that he was then in a state of intoxication, or to any minor without consent of his guardian, should be deemed guilty of misdemeanor, and fined not less than $5 nor more than $100 or imprisoned 10 to 60 days or both. All places where liquor should be found were declared to be common nuisances. Any person causing the intoxication of another was declared liable to pay compensation to any one taking charge of said intoxicated person in a reasonable amount and $5 per day in addition to said person for each day such intoxicated person should be kept in consequence of such intoxication. Any dependent was given a right of action against any person causing intoxication. Real estate and personal property was held liable for fines and costs. All sales of intoxicants made on credit were declared void, and the debt thereby created not recoverable at law.

Gen. St. 1868, c. 50: Fine for sale of intoxicants to an Indian was changed to not less than $5 nor more than $500.

Gen. St. 1868, c. 53, provided that no intoxicants be given to any prisoner by the sheriff or jailor of any prison, unless the prisoner's health required it and provided fines for violation thereof. Also that any other person who should sell to any person in jail should be subject to a fine not to exceed $25.

## The Proposed Prohibitory Amendment.

Laws 1879, § 1, p. 293: "The following proposition to amend the constitution of the state of Kansas shall be submitted to the electors of the state, for adoption or rejection, at the general election to be held on the Tuesday succeeding the first Monday of November, A. D. eighteen hundred and eighty.

"Proposition—Article fifteen shall be amended by adding section ten thereto, which shall read as follows: The manufacture and sale of intoxicating liquors shall be forever prohibited in this state, except for medical, scientific and mechanical purposes.

"Section 2. The following shall be the method of submitting said proposition to the electors: The ballots shall be either written or printed, or partly written and partly printed, and those voting for the proposition shall vote, 'for the proposition to amend the constitution,' and those voting against the proposition shall vote, 'against the proposition to amend the constitution.'

"Section 3. This resolution shall take effect and be in force from and after its publication in the statute book." (Adopted November 2, 1880; votes for, 92,302; against, 84,304.)

Citations applicable thereto: State has power to prohibit manufacture and sale as beverage, Prohibitory Amendment Cases, 24 Kan. 700; law prohibiting manufacture and sale not repugnant to state Constitution, State ex rel. v. Foster, 32 Kan. 765, 3 P. 534; Legislature may absolutely prohibit manufacture or sale of intoxicating liquor, State v. Durein, 70 Kan. 13, 80 P. 987; section cited in discussing Bone Dry Act, and Persistent Violator Act, State v. Berry, 103 Kan. 891, 176 P. 649; rights under Federal Constitution not violated by this act, Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; federal act making liquor subject to state law held valid, In re Rahrer, 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572; State v. Bieber, 121 Kan. 536, 247 P. 875, 48 A. L. R. 252.

Laws 1881, c. 128, § 16: This law provided for the prohibition of tippling shops, saloons, dramshops, clubrooms, etc.

Citations applicable thereto: Section held valid. State v. Woodard, 7 Kan. App. 421, 53 P. 278; State v. Topeka Club, 82 Kan. 756, 109 P. 183, 29 L. R. A. (N. S.) 722, 20 Ann. Cas. 320; keeping liquor for personal use not offense under this section, State v. Standish, 37 Kan. 643, 16 P. 66; keeping liquor for sale is punishable without proof of actual sales. State v. Schoenthaler, 63 Kan. 148, 65 P. 235; each delivery constitutes separate offense, State v. Peak, 66 Kan. 701, 72 P. 237; conducting saloon as lodge held unlawful, State v. Bush, 70 Kan. 739, 79 P. 657.

Laws Making Constitutional Amendment Effective.

Laws 1881, c. 128: Any person who should manufacture, sell, or barter intoxicating liquor deemed guilty of a misdemeanor, unless said liquor be sold for medical, scientific, or mechanical purposes. Any one selling intoxicating liquor had to first secure from the probate judge of the county a druggist's permit therefor which was good for one year. A petition signed by at least twelve citizens of the township or city where such business was located was presented to the court, signifying that the applicant was a person of good moral character and lawfully engaged in the business of druggist. Bond was also required in the sum of $2,500 conditioned that the applicant would not dispose of liquor in violation of the terms of the act. In cities and towns of less than 5,000 population, bond was required only in the sum of $1,000. A permit under this act, issued at the discretion of the probate judge (see Stanley v. Monnet, 34 Kan. 708, 9 P. 755; Martin v. Probate Judge, 32 Kan. 146, 4 P. 153), who received compensation in the sum of $5 for his services. The permit was to be posted in a conspicuous place in the store where such business was carried on. Any physician deeming it necessary for the health of a patient could procure intoxicating liquor for the patient's use and give him a written prescription therefor. See State v. Nye, 32 Kan. 201, 204, 4 P. 134, 136; Miller v. Minney, 31 Kan. 522, 3 P. 427. It was necessary that the physician file an affidavit with the probate judge stating that such liquor was necessary for the health of his patient. Each affidavit had to be renewed at the end of 5 years. Any physician making a prescription without affidavit was deemed guilty of a misdemeanor. No druggist could fill any prescription calling for intoxicating liquor until the affidavit of the physician had been filed with the court as provided by this act. No druggist could sell for medical purposes without a written prescription of the doctor prescribing the same, and neither could he sell for mechanical or scientific purposes unless upon affidavit made before some officer authorized to administer oaths. All such applications were filed in probate court at the end of a 30-day period, where they were then kept for a period of 2 years. Every person who made a false oath was guilty of perjury, and no sales could be made to minors under any condition except upon prescription. Druggists kept a record of all intoxicating liquors sold by them, which was a public record. Any druggist having a permit to sell liquors might sell in quantities of not less than one gallon to any other druggist having a like permit. Section 5 of this act provided that the manufacture of liquors in Kansas except for medical, scientific, or mechanical purposes was forbidden, and any person desiring to do the same was required to present to the probate court of the county in which the business was to be carried on a petition asking for a permit for such purpose. Bond was required in the sum of $10,000. If satisfied with the bond and petition, the probate judge had the right in his discretion to grant a permit for the manufacture of intoxicating liquors for the purposes above stated, the permit to be recorded in the office of the probate judge. The act also provided that the manufacturer keep a complete record of all liquors manufactured by him, sales made, to whom, the kind and quality of the liquor sold, and the price received or charged therefor. Such record was filed quarterly in the probate court. The act provided the liquor was to be sold only in the original package,

and then in quantities of less than five gallons. All sales so made were made only upon written application to the manufacturer, verified by affidavit of the applicant. All applications were filed in the office of the probate court 30 days after receiving the same and kept on file by the court 2 years thereafter. All records were open for inspection at all times. Any one not having a permit to sell liquors as provided by this act was deemed guilty of a misdemeanor and fined $100 to $500 or imprisoned in the county jail 30 to 90 days. The act provided more severe penalties for a second and further offense. Any person who manufactured liquor without a permit as provided in this act was deemed guilty of a misdemeanor, and subjected to the same punishment as one who sold without a permit. Any person who possessed a permit and sold liquor for any unlawful purpose or violated any provision of this act was deemed guilty of a misdemeanor and subjected to a fine of $100 to $300 or imprisoned in the county jail 30 to 90 days, and forfeited his permit. More severe penalties were provided for second and other offenses. Intoxicating liquors under this act were defined as any spirituous, malt, vinous, etc., liquors which would produce intoxication. Permits to sell under this act were in force for one year from the date granted. Permits to manufacture lasted for 5 years from date. Any police officer, sheriff, constable, etc., who knew of the violation of any of the provisions of the above act was required to report the same to the county attorney, and, failing to do so, was guilty of a misdemeanor and subjected to fine and removal from office. It was the duty of the county attorney to diligently prosecute such offenses if sufficient grounds existed therefor, and failure to do so was a misdemeanor, and he became subject to fine and removal from office. For each successful prosecution under this act, the county attorney was entitled to a fee of $15.

Citations applicable thereto: This act held constitutional, Intoxicating Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284; courts will take judicial notice of intoxicating qualities of ordinary liquors, Intoxicating Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284. See, also, State v. Sterns, 28 Kan. 154. On the admission of evidence in prosecutions under this section, see State v. Schaefer, 44 Kan. 90, 24 P. 92; beer presumed to be intoxicating liquor, State v. Teissedre, 30 Kan. 476, 2 P. 650; State v. Jenkins, 32 Kan. 477, 4 P. 809; State v. Pfefferle, 36 Kan. 90, 12 P. 406; City of Topeka v. Zufall, 40 Kan. 47, 19 P. 359, 1 L. R. A. 387.

Section 13 of the act last above named provided that all places where intoxicating liquors were manufactured, sold, or given away in violation of the provisions of this act be declared common nuisances. Police officials could abate the same, and the owner thereof was subject to a fine of from $100 to $500 or imprisonment in the county jail from 60 to 90 days or both.

Every person who caused the intoxication of another was liable for reasonable compensation for his care and $5 per day for each day such intoxicated person was kept. Every wife, child, etc., or employer or other person who was injured in personal property by any intoxicated person had a right of action against any person, who, by furnishing such intoxicating liquor, caused the intoxication of such person for all damages actually sustained as well as for exemplary damages. See Werner v. Edmiston, 24 Kan. 147; Zibold v. Reneer, 73 Kan. 312, 85 P. 290. Married women had the right to prosecute such an action as if feme sole. A minor could bring the action by his guardian or next friend. This section valid; Durein v. Pontious, 34 Kan. 353, 8 P. 428; Werner v. Edmiston, 24 Kan. 147; Jockers v. Borgman, 29 Kan. 109, 44 Am. Rep. 625; action under this section, see Durein v. Pontious, 34 Kan. 353, 8 P. 428; Jockers v. Borgman, 29 Kan. 109; husband may maintain action, Landrum v. Flannigan, 60 Kan. 436, 56 P. 753; Zibold v. Reneer, 73 Kan. 312, 85 P. 290.

Every person who directly or indirectly maintained, either by himself or by association with oth-

ers, any clubrooms or other place in which intoxicants were sold or given away for distribution among the members of the society, was guilty of a misdemeanor, and liable to a fine of one hundred to five hundred dollars or imprisonment in the county jail 30 days to 6 months.

Cases applicable to the above provision are: State v. Nickerson, 30 Kan. 545, 2 P. 654; State v. Peak, 66 Kan. 701, 72 P. 237. Moving liquors across state line for sale within state held unlawful, State v. Kirmeyer, 88 Kan. 589, 128 P. 1114 (reversed 236 U. S. 568, 35 S. Ct. 419, 59 L. Ed. 721). Section held to apply to prosecution of persistent violators, State v. Compton, 94 Kan. 642, 146 P. 1161. See, also, Harris v. Hardesty, 111 Kan. 295, 207 P. 188.

Leased premises were subject to a lien for fines and costs. The penalty for intoxication was $5 or imprisonment in the county jail not exceeding 10 days. The county attorney was required to advise with the probate judge in granting permits for the manufacture or sale of intoxicating liquor.

Citations applicable thereto: Knowledge of agent is knowledge of nonresident principal, Financial Association v. State, 6 Kan. App. 206, 49 P. 696; lien attaches to property leased by husband as agent for wife, Hardten v. State, 32 Kan. 637, 5 P. 212; notice to agent is notice to principal, Hardten v. State, 32 Kan. 637, 5 P. 212; county attorney may proceed by civil action to enforce lien, State v. Pfefferle, 33 Kan. 718, 7 P. 597; lien is liability created by statute, not penalty or forfeiture, State v. Pfefferle, 33 Kan. 718, 7 P. 597; section is constitutional and valid, State v. Snyder, 34 Kan. 425, 8 P. 860; unnecessary to show knowledge by proprietor of particular sales, Cordes v. State, 37 Kan. 48, 14 P. 493; fines and costs in criminal action prima facie amount of lien, Pfefferle v. State, 39 Kan. 128, 17 P. 828; husband is proper defendant where title in wife, Pfefferle v. State, 39 Kan. 128, 17 P. 828; lien attaches and operates from date of conviction of tenant, Snyder v. State, 40 Kan. 543, 20 P. 122; conveyance of premises after conviction will subject to lien, Snyder v. State, 40 Kan. 543, 20 P. 122. See, also, Karcher v. State, 80 Kan. 757, 104 P. 568. Appeal from conviction, effect as to enforcement of lien, considered in State v. Alexander, 84 Kan. 393, 114 P. 241.

Laws 1883, c. 104, provided that, if any person be drunk in a public place or in his own house, disturbing his family's peace or the peace of others, he shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined in any sum not exceeding $25 or imprisonment in the county jail for a period not exceeding 30 days. Prosecution under this act had to be commenced 30 days after the misdemeanor had been committed.

Citations applicable thereto: Intoxication through mistake of fact proper defense, section held valid, State v. Brown, 38 Kan. 390, 16 P. 259; section does not limit authority of city to punish for drunkenness, City of Minneola v. Naylor, 84 Kan. 147, 113 P. 309. See, also, State v. Clark, 117 Kan. 133, 230 P. 318; Crabb v. Kansas State Board of Dental Examiners, 118 Kan. 513, 515, 235 P. 829; State v. Bieber, 121 Kan. 536, 540, 247 P. 875, 48 A. L. R. 252, and State v. McLaughlin, 121 Kan. 693, 695, 249 P. 612; Garden City v. Legg, 126 Kan. 569, 268 P. 827; State v. Smith, 128 Kan. 139, 276 P. 80.

Laws 1885, c. 149: An act amendatory of and supplementary to chapter 128, Laws 1881. Amended to provide that a permit granted by the probate judge of the county for a period of one year may be revoked in the discretion of the judge of the probate court at any time. The petition for such permit must be signed by 12 freeholders, whereas the former law stated 12 citizens. The requirement for bond was repealed. Section 3, c. 128, Laws 1881, was amended by this law to provide that a physician may administer the liquor himself where it is deemed actually necessary. Also provided that a physician may purchase intoxicating liquors upon his written or printed statement that same will be used for medical purposes. Section 4 provided that any druggist having a permit under the provisions of the act

might sell the same for medical or other purposes upon the written statement of the applicant, the written prescription of a physician, or to a manufacturer upon his written or printed statement, and such druggist might sell intoxicating liquors for mechanical or scientific purposes only upon the written or printed statement of the applicant setting forth the particular purpose for which such liquor was required, the kind and quantity desired, and that it was not intended for beverages nor to sell nor to give away, and, when it was desired for medical purposes, the applicant should state that it was actually needed and necessary, and there should be but one sale and delivery on any one prescription or statement. That no druggist should permit the drinking on his premises of liquor purchased by prescription or otherwise, provided, however, that the druggist should be permitted to sell to any regularly practicing physician who was engaged in the practice of his profession any of the liquors named in the act, upon his written or printed statement that said liquors were to be used for medical purposes; that all statements were to be filled out and should be signed by the applicant in the presence of the druggist and attested by him. Thirty days thereafter all such statements, together with the druggist's affidavit that the liquors mentioned therein were all the intoxicants sold by him during the month, should be filed by him in the office of the probate judge who issued the permit where they shall be kept for a period of 2 years; that every person making a false statement for the purpose of obtaining liquor should be deemed guilty of a misdemeanor, and upon conviction therefor should be punished by a fine of not less than $100 nor more than $500, and by imprisonment in the county jail not less than 30 nor more than 90 days. Section 7 of the act should be amended to read: "Any person without taking out and having a permit to sell intoxicating liquors, as provided in this act, or any person not lawfully and in good faith engaged in the business of a druggist, who shall directly or indirectly sell or barter any spirituous, malt, vinous, fermented, or other intoxicating liquors, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than $100 nor more than $500, and be imprisoned in the county jail, not less than 30 nor more than 90 days." Section 8 of the act was amended to contain the provision that anything in the act which relates to the manufacture of intoxicants should not be construed to prohibit the making of wine or cider from grapes or apples raised by the person making the same for his own use or the sale of wine for communion purposes. Section 9 of the act was amended to contain the provision that, if any person who had a permit to sell liquors, and sold to any person whom he had reason to believe desired the liquor for an unlawful purpose, or sold to any one under the influence of liquor, or who was in the habit of becoming intoxicated, or sold it to be drunk on his premises, should be deemed guilty of a misdemeanor, and fined not less than $100 nor more than $500, and be imprisoned in the county jail not less than 30 nor more than 90 days, and should forfeit his permit and for 5 years, his right to be granted a permit should be forfeited. Section 12 of the act as amended provided that any sheriff or other police officer not reporting any violation of this law should be fined not less than $100 nor more than $500. That such conviction should work a forfeiture of his office.

Citations applicable thereto: Duty of county attorney to proceed; prosecution by city insufficient, State v. Trinkle, 70 Kan. 396, 78 P. 854; ousted mayor cannot be re-elected to finish term, State v. Rose, 74 Kan. 262, 86 P. 296, 6 L. R. A. (N. S.) 843, 10 Ann. Cas. 927; police judge included in this section, State v. Keener, 78 Kan. 649, 97 P. 860, 19 L. R. A. (N. S.) 615; police should communicate information to county attorney, manner of communication, etc., State v. Bowden, 80 Kan. 49, 101 P. 654.

It was further provided in the above act that, if any county attorney shall have notice of any viola-

tion of the provisions of the act, he might issue subpœnas for such person or persons ás he had reason to believe had knowledge concerning the violations of the act, to testify before him at a time and place designated in such subpœna. The witness might be put under oath, the testimony reduced to writing and signed by the witness, and the county attorney had the power to punish for contempt.

If the testimony disclosed that an offense had been committed, the county attorney should file complaint or information, together with such testimony, and such statement so filed should have the same effect as though the information or complaint had been verified positively. That warrant should thereupon issue for the arrest of the person or persons named in such information, and, in addition thereto, should command the officer to whom it should be directed to seize and take into his custody any and all intoxicating liquor, vessels, and barrels containing the same which he might find in such premises to be safely kept subject to the order of the court. The statement of the witness must describe the property to be seized and the place where kept, and, if upon trial of such person he be convicted of violating any provisions of this act, the court should order as a part of his judgment, in addition to the penalty herein provided, that the officer having custody thereof shall destroy all such property used or employed for such illegal purposes.

Citations applicable thereto: Section sufficient to justify county attorney in filing information, State v. Wheldon, 6 Kan. App. 650, 652, 49 P. 786; failure to file statement, State v. Kirkpatrick, 52 Kan. 50, 34 P. 415; State v. Huffman, 51 Kan. 541, 33 P. 377; State v. Tuchman, 47 Kan. 726, 727, 28 P. 1004; state confined to sales specified in statement, State v. Lawson, 45 Kan. 339, 25 P. 864; State v. Whisner, 35 Kan. 271, 10 P. 852.

The act further provided that, if the name of the violator be unknown, action might be brought against the place where the liquor was found and warrant issued against the keeper or keepers thereof. Statements must describe place where sold. The act provided that the county attorney should be allowed a fee of $25 upon each count upon which the defendant should be convicted and the same be taxed as costs in the case, but the county in no case should be liable therefor; that, upon all sums collected by the county attorney for forfeited recognizances, he should receive 20 per cent. thereof; that it should be his duty to diligently prosecute persons violating any provisions of the act, and should immediately bring suit upon forfeited bonds to recover the penalty and pay out any so collected into the school fund of his county. Failure to so diligently prosecute rendered him guilty of a misdemeanor, and, upon conviction, he should be fined not less than $100 nor more than $500, and be imprisoned not less than 10 nor more than 90 days in the county jail, and such conviction should operate as a forfeiture of his office. Upon refusal of the county attorney to prosecute under the provisions of this act, it should be the duty of the Attorney General to enforce this law.

The act further provided that any person who should take or receive orders for the sale of intoxicating liquor from any person not authorized to sell the same or any person who should directly contract with any person in this state other than a person authorized to sell the same should be deemed guilty of a misdemeanor, and, upon conviction punished as provided for the sale of intoxicating liquors.

Citations applicable thereto: Solicitation of orders or making contract of sale is a misdemeanor, Westheimer v. Weisman, 8 Kan. App. 75, 54 P. 332; Id., 60 Kan. 753, 57 P. 969; act held invalid as applied to interstate commerce, State v. Hickox, 64 Kan. 650, 651, 68 P. 35. See, also, State v. Sherman, 81 Kan. 874, 107 P. 33, 135 Am. St. Rep. 403; State v. Kirkmeyer, 88 Kan. 589, 128 P. 1114; Crigler v. Shepler, 79 Kan. 834, 101 P. 619, 23 L. R. A. (N. S.) 500.

In the abatement of any common nuisance, any fixtures therein found such as barrels, bottles, glasses, decanters, etc., should be destroyed, and the owner thereof adjudged guilty of maintaining a common nuisance, and punished by fine of not less than $100 nor more than $500, and should be imprisoned in the county jail not less than 30 days nor more than 90 days. The Attorney General or county attorney or any citizen of the county where such nuisance existed might maintain an action in the name of the state, to perpetually enjoin the same, and such injunction might be granted at the commencement of the action without bond. Any person violating the terms of the injunction should be deemed guilty of contempt.

Section 21 was amended to read: In all indictments under the provisions of this act, it shall not be necessary to state the kind of liquor manufactured or sold and it shall not be necessary to describe the place where sold except in prosecutions for keeping and maintaining a nuisance, or when a lien is sought to be established against the place where liquor is sold and it shall not be necessary to state the name of the person to whom sold. Persons buying liquors are competent witnesses under this act. No person shall be excused from testifying as to any offense committed by another against any of the provisions of this act by reason of his testimony tending to criminate him, but all testimony given by him for such purpose, shall in no case be used against him. Section held valid, State v. Schweiter, 27 Kan. 499.

Whenever any relatives of any intoxicated person or persons addicted to the use of intoxicating liquors shall forbid any druggist from selling, bartering, or giving away to such person any intoxicating liquors, it shall be unlawful for any such druggist to let such person have any intoxicants upon any terms or conditions whatever. That any druggist violating these terms should be deemed guilty of a misdemeanor. The giving of intoxicants to a minor by any person other than relatives or a physician should be unlawful, and any person so doing would be guilty of a misdemeanor. See State v. Fletcher, 74 Kan. 620, 87 P. 729. Any officer or employee of a railroad company, express company, or other common carrier, who shall knowingly carry or deliver to any person intoxicants in violation of this act, should be deemed guilty of a misdemeanor; that any citizen who desired might employ an attorney to assist the county attorney in the prosecution of suits under this act.

Citations applicable thereto: Defects in verification of information waived by recognizance, State v. Goff, 10 Kan. App. 286, 61 P. 680, reversed, 62 Kan. 104, 61 P. 683; section is constitutional and valid, State v. Schweiter, 27 Kan. 499; unnecessary to state in information name of purchaser, State v. Schweiter, 27 Kan. 499; State v. Forner, 32 Kan. 281, 4 P. 357; State v. Brooks, 33 Kan. 708, 7 P. 591; unnecessary in information to state kind of liquor, State v. Sterns, 28 Kan. 154; State v. Brooks, 33 Kan. 708, 7 P. 591; information is sufficient though stating date of offense in blank, State v. Brooks, 33 Kan. 708, 7 P. 591; verdict cures defects in information not objected to at trial, State v. Ratner, 44 Kan. 429, 24 P. 953; complaint under ordinance for keeping drinking resort must describe the place, City of Kansas City v. Smith, 57 Kan. 434, 435, 46 P. 710; description of liquor nuisance is sufficient if place may be identified, State v. Walters, 57 Kan. 702, 47 P. 839. See, also, State v. Allen, 63 Kan. 598, 66 P. 628; State ex rel. v. Dick & Bros. Brewing Co., 96 Kan. 215, 150 P. 568.

Laws 1887, c. 164, provided that it should be unlawful for any person to have in his possession or under his control any intoxicating liquor within one-half mile of any voting place, or to sell, barter, or give away any intoxicating liquor within the vicinity of such voting place; that any person so offending should be deemed guilty of a misdemeanor.

Laws 1887, c. 165, was amendatory to Laws of 1881 and supplementary to the Laws of 1885 above. It

provided that any druggist procuring a permit to sell liquor under this act must be a registered pharmacist of the state of Kansas. Any druggist, in order to obtain his permit to sell liquor, must file a petition 30 days prior to the hearing thereof in the office of the probate judge of the county, which permit shall be signed by 25 freeholders having the qualifications of electors and 25 women over the age of 21 years, which petition shall state that the applicant is a person of good moral character, does not use intoxicants himself, and can be entrusted to sell the same; that he is a pharmacist, and is in good faith lawfully engaged in such business, and that he has a stock of drugs in his store of the value of $1,000. Before the permit is issued, the applicant must give public notice of the fact that he has applied for a permit and further state the time and place set for the hearing of such petition. Permits are granted in the discretion of the probate judge, and are to be posted in the petitioner's store in a conspicuous place. Bond in the sum of $1,000 must be given that neither he nor any one in his employ will use, sell, barter, nor give away intoxicants, and, on violation of the same, his bond is forfeited, and the conviction of such pharmacist shall be deemed prima facie evidence of such violation. Appeals to the district court may be taken from the decision of the probate judge upon the giving of a bond for $50. On receipt of the petition signed by 25 men and 25 women in the township, city ward, etc., in which the business of the druggist is carried on, requesting that his permit be canceled because of violation of the terms stated above, the probate judge will issue an order citing him to appear before him not more than 30 days from the date, requesting him to appear before him for hearing. If it appears that the druggist has violated the provisions of this act, his permit shall be canceled. Appeals may be taken to the district court. His permit becomes inoperative until the final decision of the district court where appeal has been taken. Probate judge may cancel the permit any time of his own motion. For unlawfully issuing a permit, the probate judge becomes guilty of a misdemeanor. The applicant must pay a $5 fee on the filing of his application for a permit.

Section 4 was amended by section 2 to provide that a druggist must sell intoxicants in person or by a clerk who is a registered pharmacist under the laws of this state, for medical purposes, only upon the written or printed statement of the applicant setting forth the particular medical purpose for which it is required and the kind and quantity desired; that it is necessary and actually needed, and not intended to be used as a beverage, and that the applicant is over 21 years of age. A similar order must be made before a druggist can sell intoxicating liquors for mechanical or scientific purposes. There shall be but one sale and one delivery on any affidavit. No drinking on the premises or in apartments under the control of the druggist shall be allowed. Affidavits here provided for are to be made in the presence of the pharmacist upon blanks furnished by the county clerk which are of uniform style and consecutively numbered. All pharmacists and assistant pharmacists have power, under this act, to administer oaths. Affidavits filed monthly and at the end of the month are sent to the probate judge for keeping for a period of 2 years. Any person signing a name other than his own to an affidavit for purpose of obtaining intoxicants shall be guilty of perjury. Any one reselling or using beverages shall be guilty of misdemeanor. The druggist shall keep a daily record of sales of intoxicants which is to be at all times open to the public. Any druggist who fails to keep the reports above provided or violates any of the provisions of this law shall be guilty of a misdemeanor. His permit shall be forfeited for 5 years thereafter.

Section 13 was amended by section 4 to read substantially as follows: All places where intoxicating liquors are manufactured, sold, or given away in violation of any of the provisions of this act, or where persons are permitted to resort for the purpose of drinking, are declared to be common nuisances, and may be abated as such. Remainder of the section remains the same, except for the provision that fixtures found therein be publicly destroyed.

Citations applicable thereto: Section held valid in the following cases: State v. Campbell, 50 Kan. 433, 32 P. 35; State v. Lindgrove, 1 Kan. App. 51, 41 P. 688; State v. Teissedre, 30 Kan. 476, 2 P. 650; State v. O'Connor, 3 Kan. App. 594, 43 P. 859; State v. Walters, 57 Kan. 702, 47 P. 839; Koester v. State, 36 Kan. 27, 12 P. 339; State v. Krum, 32 Kan. 372, 4 P. 621; State v. Davis, 44 Kan. 60, 24 P. 73.

Section 5 of chapter 128 of the Laws of 1881 was amended by section 6 to read that all manufacturer's petitions for a permit to manufacture intoxicants be accompanied by a certificate of at least 100 resident electors of the ward of the city or by a majority of the resident electors of the township, that the applicant is a person of good moral character, and a proper person to engage in this business. Bond is required in the sum of $10,000. Remainder of act remains the same. Any county clerk or probate judge refusing to perform the duties required of him under this law is guilty of a misdemeanor.

Citations applicable to the above sections: Having a permit and not a druggist, State v. Tanner, 50 Kan. 365, 31 P. 1096; druggist having permit may be enjoined, State v. Davis, 44 Kan. 60, 24 P. 73; evidence construed, State v. Skinner, 34 Kan. 256, 8 P. 420; State v. Sterns, 28 Kan. 154; State v. Schmidt, 34 Kan. 399, 8 P. 867; Assistant Attorney General may verify complaint, In re Gilson, 34 Kan. 641, 9 P. 763; physician cannot furnish, State v. Fleming, 32 Kan. 588, 5 P. 19; clerk of druggist having permit may sell, State v. Hunt, 29 Kan. 762, 764; State v. Copp, 34 Kan. 522, 9 P. 233; State v. Nield, 4 Kan. App. 626, 630, 45 P. 623; this section held valid, In re Gilson, 34 Kan. 641, 9 P. 763; State ex rel. v. Foster, 32 Kan. 14, 3 P. 534; State v. Crilly, 69 Kan. 802, 77 P. 701; assistant attorney appointed under this section has power to sign indictment charging unlawful sale of intoxicating liquor; duty of county attorney, State ex rel. Coleman v. Trinkle, 70 Kan. 396, 78 P. 854; provision for appointment of Assistant Attorney General held valid. State v. Brooks, 74 Kan. 175, 176, 85 P. 1013.

Laws 1887, c. 165, § 9, provided that it shall be the duty of all sheriffs, constables, majors, marshals, police judges, and other local officers of any city or town having notice or knowledge of any violations of the provisions of this act to notify the county attorney and to furnish him the names of any citizens within his knowledge by whom such violations can be proven. Any officer failing to comply with the provisions of this act upon conviction shall be fined not less than $100 nor more than $500.

Citations applicable thereto: County attorney must act on reports, State v. Trinkle, 70 Kan. 396, 78 P. 854; title of act broad enough to cover removal of mayor, State v. Everhardy, 75 Kan. 851, 90 P. 276; police judge is within penalties of section, State v. Kenner, 78 Kan. 649, 97 P. 860, 19 L. R. A. (N. S.) 615; not sufficient that officer merely talks occasionally with county attorney, State v. Bowden, 80 Kan. 49, 101 P. 654; no action taken on previous report, sheriff not excused thereby, State ex rel. v. Martin, 87 Kan. 817, 126 P. 1080. State v. Finch, 128 Kan. 665, 280 P. 910, 66 A. L. R. 1369.

Laws 1891, c. 131: Sale of all liquors or drugs that will produce intoxication or stupefaction to inmates of national or state homes for disabled voluntary soldiers is prohibited and provisions made for the punishment of same.

Laws 1901, c. 232, p. 416, § 1: All places where intoxicating liquors are manufactured, sold, bartered, or given away in violation of the law, or where persons are permitted to resort for the purpose of drinking intoxicating liquor as a beverage, or where intoxicating liquors are kept for sale, barter, or

delivery in violation of the law and all intoxicating liquors, bottles, glasses, kegs, pumps, barrels, and other property kept in and used in maintaining such a place are hereby declared to be common nuisances, and every person who maintains or assists in maintaining such common nuisances shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $100 nor more than $500, and be imprisoned in the county jail not less than 30 days nor more than 6 months for each offense.

Section 2: Upon the filing of the complaint setting out that the place is being maintained or kept as a common nuisance, a warrant shall be issued directing the officer to arrest the person or persons maintaining such a nuisance and to search the place described and to seize all the liquors and equipment for the sale of liquor found therein and keep the same safely subject to the order of the court. The complaint shall describe the place in question with sufficient particularity to identify it, and, where possible, shall describe the liquors sold therein, but any description so general in its nature as to enable an officer to identify the same shall be deemed to be a sufficient description. Upon the return of the warrant, the court shall proceed in the same manner as in the case of a person arrested.

Citations applicable thereto: See Greentree v. Wallace, 77 Kan. 149, 93 P. 598; owner cannot maintain replevin, Allison v. Hern, 102 Kan. 48, 51, 169 P. 187; State v. Queen, 103 Kan. 632, 176 P. 111, and State v. Carr, 114 Kan. 442, 218 P. 1007. Verification of information by prosecuting officer held proper, State v. Queen, 103 Kan. 632, 176 P. 111; State v. Clark, 117 Kan. 133, 230 P. 318; State v. Adler, 119 Kan. 757, 241 P. 119; State v. Toelkes, 128 Kan. 293, 278 P. 20; State v. Martin, 129 Kan. 240, 282 P. 726; State v. Geselle, 131 Kan. 729, 293 P. 494.

Section 3: Within 48 hours after the seizure of the property as described in the foregoing section, a notice shall issue to the defendants to appear and show cause why the same should not be adjudged forfeited and ordered destroyed. It should be served in the same manner as a summons. Any person interested in the outcome of matters of this kind, as an owner of some of the fixtures held, may interplead. Trial shall be had in a summary manner before the court of the allegations of the complaint or information against the liquors or other property seized, and, whether any answer shall be filed or not, it shall be the duty of the county attorney to appear and adduce evidence in support of such allegations.

Section 4: All intoxicating liquors found to have been used in the maintenance of the common nuisance shall be adjudged forfeited and publicly destroyed. Appeals from judgment of the court under violations of this section may be taken in the same manner as in the case of criminal appeals.

The maintenance of a common nuisance shall render void the lease under which a tenant holds possession of a building, and shall give the lessor an immediate right of entry. If an owner knowingly permits the operation of a common nuisance, he shall be deemed guilty of assisting in its maintenance.

Section 5 provides that the use of a building by a tenant in maintaining a common nuisance renders void the lease under which he holds, and the right of immediate possession accrues to the owner of the building.

Section 6 provides that any one who knowingly permits any building or tenement owned or leased by him or under his control or any part thereof to be used in maintaining a common nuisance, or, after being notified in writing of such use, omits to take all reasonable measures to eject therefrom persons so using same, shall be deemed guilty of assisting in maintaining such nuisance.

Section 7 provides that cities of the first, second, and third classes may provide by ordinance for the prohibition of the sale of intoxicating liquors contrary to law and the suppression of common nuisances as hereinafter defined and for the search of premises where such common nuisances are maintained, and for the seizure of the property used in maintaining the same. The presence of either liquor or fixtures for the sale of same shall be deemed prima facie evidence that such liquors are kept for sale except in the case of liquors being found in a private residence.

Citations applicable thereto: This act is valid, State v. McManus, 65 Kan. 720, 70 P. 700; personal punishment without abatement of nuisance, State v. Lee, 65 Kan. 698, 70 P. 595; evidence, State v. Engleman, 66 Kan. 340, 71 P. 859; State v. Schoenthaler, 63 Kan. 148, 65 P. 235; seizure, Iler Brewing Co. v. Campbell, 66 Kan. 361, 71 P. 825; not necessary to aver that place is not a private dwelling house, State v. Thurman, 65 Kan. 90, 68 P. 1081; druggist keeping a nuisance, State v. Engborg, 63 Kan. 853, 66 P. 1007; no proof of actual sales, State v. Lewis, 63 Kan. 265, 65 P. 258; evidence as tending to charge owner with knowledge of use of building; part of liquors not used in nuisance cannot be destroyed, State v. Woodland, 89 Kan. 641, 132 P. 204 (see, also, State v. Brooks, 74 Kan. 175, 85 P. 1013); penalties imposed by city must conform to state law, Assaria v. Wells, 68 Kan. 787, 75 P. 1026; this section is valid, City of Wilson v. Herink, 64 Kan. 607, 68 P. 72; seizure of taxicab held lawful, Allison v. Hern, 102 Kan. 48, 169 P. 187; time for hearing as to forfeiture of property stated, State v. Foren, 78 Kan. 654, 97 P. 791; place of seizure must be within jurisdiction of court, State v. Woodland, 89 Kan. 641, 132 P. 204; see, also, State v. Queen, 103 Kan. 632, 176 P. 111; possession is prima facie evidence when, section held valid, State v. Sheppard, 64 Kan. 451, 67 P. 870; common nuisance, liquor, glasses, pumps, faucets, etc., should be destroyed, State v. Poggmeyer, 91 Kan. 633, 138 P. 593; the general reputation of the place may be shown, State v. Brooks, 74 Kan. 175, 85 P. 1013; moving vehicle may become a common nuisance, Kansas City Breweries Company v. Kansas City, 96 Kan. 731, 153 P. 523; drug store selling Jamaica ginger declared a common nuisance, State v. Miller, 92 Kan. 994, 142 P. 979; hotel porter cannot store ice and serve liquor for guests, State v. Ross, 86 Kan. 799, 121 P. 908; injunction properly allowed restraining sale in streets and alleys, State v. Rabinowitz, 85 Kan. 841, 118 P. 1040, 39 L. R. A. (N. S.) 187; injunction may restrain defendants from maintaining nuisance anywhere in county, State v. Dykes, 83 Kan. 250, 111 P. 179; court may grant temporary injunction without defendant having had notice, State v. Jepson, 76 Kan. 644, 92 P. 600; persistent violator, see State v. Shiffler, 93 Kan. 618, 144 P. 845; section held valid, City of Wilson v. Herink, 64 Kan. 607, 68 P. 72; Stahl v. Lee, 71 Kan. 511, 80 P. 983; penalties imposed by city must conform to state law, Assaria v. Wells, 68 Kan. 787, 75 P. 1026; city may prosecute suit to enjoin and abate liquor nuisance, Kansas City Breweries Co. v. Kansas City, Kansas, 96 Kan. 731, 153 P. 523; cities may regulate and prohibit transportation of liquor, Kansas City v. Jordan, 99 Kan. 814, 163 P. 188, Ann. Cas. 1918B, 273; presence of liquor in room of hotel prima facie evidence, State v. Roos, 86 Kan. 799, 121 P. 908; common nuisance in dwelling house, liquor not prima facie evidence, State v. Penquite, 86 Kan. 970, 122 P. 894; preponderance of evidence is sufficient to warrant an injunction, State v. Cipra, 92 Kan. 951, 141 P. 1133; statements of forms filed with county clerk are competent evidence, State v. Railroad Company, 96 Kan. 609, 152 P. 777, Ann. Cas. 1917A, 612, affirmed 248 U. S. 276, 39 S. Ct. 93, 63 L. Ed. 239, 2 A. L. R. 1589; certified copies from internal revenue office competent evidence, State v. Railroad Company, 96 Kan. 609, 152 P. 777; State v. Morris, 124 Kan. 142, 257 P. 731; State v. Rausch, 128 Kan. 291, 276 P. 799.

Laws 1901, c. 233, p. 421, relates to investigations of violations of the prohibitory law. County attorney is required to issue a subpœna for such persons as he may have information or reason to believe know of violations of the prohibitory law. "No person shall disclose any evidence so taken as here-

inbefore authorized, or disclose the name of any person so subpœnaed or examined, except when lawfully required to testify as a witness in relation thereto, until the parties against whom complaint or information shall be filed by reason of such evidence have been arrested. Any disobedience of the subpœna hereinbefore authorized, or any refusal to be sworn as a witness, or any refusal to answer any pertinent and material question propounded by the county attorney pursuant to the provisions of this act, or any refusal of a witness to sign his testimony taken under the provisions of this act, or any violation of the requirement of secrecy imposed by this act, shall be a misdemeanor, and punishable as such." Section 1.

Laws 1903, c. 338, p. 524: The county attorney may maintain a suit in the name of the state to enjoin any common nuisances as defined in the Laws of 1901, c. 232, and an injunction may be issued at the commencement of the action, and no bond shall be required. Any person violating the terms of any injunction shall be punished for contempt by a fine of from $100 to $500 and be imprisoned in the county jail from 30 days to 6 months in the discretion of the court or judge thereof.

Citations applicable thereto: No notice of application for temporary injunction is necessary, State v. Jepson, 76 Kan. 644, 92 P. 600; act not repugnant to Federal Constitution, Fritz v. State, 80 Kan. 168, 101 P. 1013; temporary injunction may be granted by a probate judge, State v. Werner, 80 Kan. 222, 101 P. 1004; see, also, Kansas Wheat Growers' Ass'n v. Schulte, 113 Kan. 672, 684, 216 P. 311; Norton v. Board of County Com'rs of Saline County, 118 Kan. 659, 236 P. 819; State v. Jones, 126 Kan. 658, 270 P. 579.

Laws 1903, c. 339, p. 525: This amends chapter 165 of the laws of 1887, section 2, whereby provision was made for a fee of $15 per annum for each 1,000 people, to be paid to the probate judge of the county for the issuance of permits to sell liquor under the terms of this act; the maximum limit of $1,000 in the old act is hereby removed.

Laws 1905, c. 347, § 1: Any officer, agent, or employee of any railroad company who shall knowingly deliver any intoxicating liquor to any person other than the person to whom such liquor is consigned and without a written order in each instance by said consignee shall be deemed guilty of a misdemeanor.

Section 2 of this act provides that it shall be unlawful for any railroad company, express company, or other common carrier or its officers or agents, etc., to deliver any intoxicating liquor to any person whatsoever where said liquor has been consigned to a fictitious person or to a person under a fictitious name, and any officer or agent, etc., so violating these provisions shall be guilty of a misdemeanor.

Section 3 provides that it shall be unlawful for any person to whom liquor is consigned, whether consigned to him in his own name or a fictitious name, to give to any other person an order for such intoxicating liquor to any railroad company or other common carrier, where the intent and purpose of such order is to enable such other person to get such liquor for himself or some other person than the consignee, and any person guilty of violating such order shall be deemed to be guilty of a misdemeanor. See Danciger v. Cooley, 98 Kan. 38, 43, 157 P. 453, affirmed 248 U. S. 319, 39 S. Ct. 119, 63 L. Ed. 266.

Laws 1909, c. 164, p. 302: The laws of 1881 relating to the sale of intoxicants amended so as to read that "any person or persons who shall manufacture, sell or barter any spirituous, malt, vinous, fermented [etc.] liquors shall be guilty of a misdemeanor and punished as hereinafter provided" (section 1). Provision for the sale of liquor for medical, scientific, and mechanical purposes as stated in the previous act left out in this new amendment. Any person who shall directly or indirectly sell or barter any liquors shall be deemed guilty of a misdemeanor, and shall be fined as provided by this act.

The county attorney, Attorney General, or Assistant Attorney General may file with some justice of the peace of the county a written statement signed by such county attorney, etc., alleging any violation of the laws of this state relating to intoxicating liquors, and such justice of the peace shall then on a written præcipe of the county attorney, or Attorney General as above stated, issue the subpœna for the witness named in such subpœna, commanding him to be and appear before such justice of the peace at the time designated in such subpœna to testify concerning any violation of the provisions of said law. Each witness shall be sworn to make true answers to all questions propounded to him touching the matters under investigation, and the testimony of each witness shall be reduced to writing and signed by the witness. Justices of the peace have power to adjourn such proceedings from time to time. If the testimony so taken discloses that an offense has been committed, the county attorney shall prosecute the person or persons committing such offense, and may file such testimony, together with a complaint or information against the person or persons having committed the offense, in some court of competent jurisdiction, and such testimony, together with the information and complaint of the county attorney, when verified by him on information and belief, shall have the same effect as if such information or complaint had been verified positively. Thereupon the warrant shall be issued.

Citations applicable thereto: Legislature may absolutely prohibit manufacture or sale of liquor, State v. Durein, 70 Kan. 13, 80 P. 987; this statute not repugnant to Constitution, State v. Sherman, 81 Kan. 874, 107 P. 33, 135 Am. St. Rep. 403; statute prohibits the sale of liquor for any purpose, held valid, State v. Weiss, 84 Kan. 165, 113 P. 388, 36 L. R. A. (N. S.) 73; statute covers any liquors which are intoxicating, State v. Miller, 92 Kan. 994, 142 P. 979, L. R. A. 1917F, 238, Ann. Cas. 1916B, 365; malt liquors presumed to be intoxicating, State v. Trione, 97 Kan. 365, 155 P. 29; enforcement of this section does not interfere with interstate commerce, State v. Sherman, 81 Kan. 874, 107 P. 33, 135 Am. St. Rep. 403; sales other than those shown in statement may be proved, State v. Wheldon, 6 Kan. App. 650, 49 P. 786; verification by county attorney unnecessary when another has verified information, State v. Brooks, 33 Kan. 708, 7 P. 591; defects in information waived by petition and removal of cause, State v. Tuchman, 47 Kan. 726, 28 P. 1004; information need not contain all statements made in preliminary inquiry, State v. Kirkpatrick, 52 Kan. 50, 34 P. 415; personal knowledge of prosecutor not subject to inquiry, State v. Taylor, 75 Kan. 417, 89 P. 672; duty of county attorney under statute mandatory, State v. Dawson, 86 Kan. 180, 119 P. 360, 39 L. R. A. (N. S.) 993; duty of prosecuting officer to file complaint, State v. Railway Company, 96 Kan. 609, 629, 152 P. 777, Ann. Cas. 1917A, 612, affirmed 248 U. S. 276, 39 S. Ct. 93, 63 L. Ed. 239, 2 A. L. R. 1589.

Laws 1909, c. 165, p. 305: It shall be lawful for any person to drink liquors upon any passenger trains or street cars, etc., in violation of this act. Any person so violating the provisions shall be guilty of a misdemeanor. Any conductor shall have the power to arrest any such person and turn him over to any constable, sheriff, police, or peace officer of the state. See State v. Farrow, 114 Kan. 202, 217 P. 700.

Laws 1911, c. 165, p. 250, § 1: Any person or persons, having once been duly convicted of the violation of the prohibitory liquor law, and who is thereafter directly or indirectly violating the provisions of the prohibitory liquor law, shall be considered a persistent violator of the prohibitory liquor law, and shall be deemed guilty of a felony, and upon conviction thereof shall be imprisoned in the state penitentiary at hard labor for not more than one year. A true copy of the journal entry of judgment showing former conviction supported by a certificate showing its authenticity shall be-

prima facie evidence of a former conviction under this act.

Citations applicable thereto: Act held valid, State v. Adams, 89 Kan. 674, 132 P. 171; former conviction need not occur subsequent to passage of act, State v. Adams, 89 Kan. 674, 132 P. 171; certified copy of court record prima facie evidence of conviction, State v. Schmidt, 92 Kan. 457, 140 P. 843. See, also, State v. Bizer, 113 Kan. 731, 733, 216 P. 303; State v. Reed, 119 Kan. 467, 239 P. 749; and State v. Cochran, 122 Kan. 183, 185, 250 P. 1071; proof of one subsequent violation is sufficient, State v. Shiffler, 93 Kan. 618, 144 P. 845; penalty single though many violations proved, State v. Shiffler, 93 Kan. 618, 144 P. 845; sales or maintenance of nuisances by convict is persistent violation, State v. Briggs, 94 Kan. 92, 145 P. 866; aider and abettor of liquor nuisance, persistent violator, State ex rel. v. Dick & Bros. Brewing Co., 96 Kan. 215, 219, 150 P. 568; violation of Bone Dry Act is within Persistent Violator Act, State v. Berry, 103 Kan. 891, 176 P. 649.

Laws 1911, c. 178, p. 304: The penalty for the unlawful sale of intoxicants shall be a fine in a sum not less than $100 nor more than $500, and by imprisonment in the county jail from 30 to 90 days, provided that any person, copartnership, or corporation engaged in the wholesale drug business, and having a stock exclusive of alcohol, worth not less than $60,000, may sell alcohol for medical, mechanical, or scientific purposes to registered pharmacists who are actually and in good faith engaged in the drug business. Such sale shall be in quantities of not less than one nor more than five gallons.

Laws 1911, c. 237: Every person holding any office of trust or profit under the laws of the state of Kansas, any state, district, county, township, or city officer, who shall in any public place within or without the state be in a state of intoxication produced by strong drink voluntarily taken, shall forfeit his office, and shall be ousted from such office in the manner hereinafter provided. Officer may be removed for delinquency, In re Macy, 109 Kan. 1, 8, 196 P. 1095, 14 A. L. R. 848; State ex rel. v. Barker, 119 Kan. 853, 241 P. 253.

Laws 1913, c. 65, § 6, provides that it shall be unlawful for any intoxicated person to operate a motor vehicle, and any owner of a motor vehicle who permits an intoxicated person to operate a motor vehicle shall be deemed guilty of a misdemeanor.

Laws 1913, c. 248, p. 428, § 1, provides that it shall be unlawful for any railroad company, express company, or other common carrier for any person, company, or corporation, to carry any intoxicating liquor into this state or from some point to another within the state for the purpose of delivery, or to deliver the same to any person, company, or corporation, within the state, except for lawful purposes.

Section 2 provides that any carrier who shall bring in intoxicating liquor into this state for a lawful purpose must file a statement with the county clerk of the county, setting forth the date on which such liquor was delivered, the name and post office address of the consignor, the place of delivery, to whom delivered, and the kind and amount of intoxicating liquor delivered. Statement is to be filed 30 days after the date of delivery of such liquor. The files of the county clerk where such statements are to be kept shall at all times be open to the inspection of the public. It shall be unlawful for any common carrier to deliver liquor to any person other than the consignee thereof. Where there is reasonable belief that the shipment contains intoxicating liquor, the consignee must file a statement declaring himself to be the owner of the liquor consigned, and that it is for his own use. A common carrier shall not be liable for damages for refusing to deliver liquor, unless a statement as provided is executed. Any one making a false statement with regard to liquors received by him is guilty of a misdemeanor. No intoxicants shall be delivered to a minor. All packages shipped from a point within the state and containing intoxicating liquors must contain the statement plainly written on the outside of the package, that "this package contains intoxicating liquor." A common carrier violating any of these provisions is guilty of a misdemeanor.

Citations applicable thereto: Webb-Kenyon Act (27 USCA § 122) commented on and held valid, State v. Columbia Brewery Co., 92 Kan. 212, 139 P. 1169; State v. Railway Co., 96 Kan. 609, 152 P. 777, Ann. Cas. 1917A, 612, affirmed 248 U. S. 276, 39 S. Ct. 93, 63 L. Ed. 239, 2 A. L. R. 1589; section is constitutional and valid, State v. Railway Co., 96 Kan. 609, 152 P. 777, Ann. Cas. 1917A, 612; section does not violate Interstate Commerce Act (49 USCA § 1 et seq.), State v. Railway Co., 96 Kan. 609, 152 P. 777, Ann. Cas. 1917A, 612. See, also, State v. Rogl, 100 Kan. 590, 592, 164 P. 1165; State v. Robinson, 118 Kan. 775, 778, 236 P. 647.

Laws 1913, c. 249, p. 430: This act provides that it shall be unlawful for any agent of a common carrier to erase the name of either the consignor or consignee or any part thereof on any shipment of intoxicating liquor while the same is under the control of such common carrier. Any agent so violating these provisions shall be deemed guilty of a misdemeanor.

Laws 1915, c. 232, p. 292: Section 1 of the Laws of 1911, c. 165, amended to read: "Every violation, directly or indirectly, of any provision of the prohibitory liquor law, by a person who has heretofore been or shall hereafter be once convicted of any violation of the prohibitory liquor law [shall be considered as a persistent violator of the law, and each conviction], shall be considered a separate and distinct felony."

Citations applicable thereto: Persistent violator defined, State v. Briggs, 94 Kan. 92, 145 P. 866; act supplemental, procedure authorized by general intoxicating liquor law governs, State v. Schmidt, 92 Kan. 457, 140 P. 843; former conviction means conviction under state law, not city ordinance, State v. Marks, 97 Kan. 147, 154 P. 261. See, also, State v. Will, 103 Kan. 59, 172 P. 1003; State v. Sweezer, 112 Kan. 818, 212 P. 661; State v. Farrow, 114 Kan. 202, 217 P. 700; State v. Reed, 119 Kan. 467, 239 P. 749; State v. Diehl, 119 Kan. 656, 240 P. 844; State v. Cochran, 122 Kan. 182, 250 P. 1071; State v. Colopy, 120 Kan. 220, 242 P. 1016; State v. Eisminger, 124 Kan. 464, 260 P. 661; Brockway v. Wagner, 126 Kan. 285, 268 P. 96; State v. Smith, 128 Kan. 139, 276 P. 80; State v. Oliver, 129 Kan. 719, 284 P. 357; State v. Fry, 131 Kan. 277, 291 P. 782.

Laws 1915, c. 233, p. 293, § 1: Every dependent or employer of any intoxicated person who shall be injured in person or property or means of support by any intoxicated person has a right of action against the owner of any place where such intoxicating liquors were sold, bartered, or given away in violation of the law without the knowledge of the owner of the premises or when such intoxication occurred on said premises when intoxicating liquors were being sold or kept thereon contrary to law, contrary to the knowledge of the owner, for all damages actually sustained and exemplary damages. If liquors were sold in violation of the law, such fact shall be deemed prima facie evidence that it was done by and with the knowledge of the owner of such premises.

Section 2 provides that any judgment obtained by the plaintiff in any action under this act shall be a lien on the premises wherein such liquor was sold or where such intoxication occurred.

Laws 1915, c. 234, p. 294: Every dependent, employee, or other person who shall be injured in person or property by any intoxicated person shall have a right of action against the city wherein such liquor was purchased. It shall be a good defense to such action if the mayor or other city officials enumerated in the statute shall prove that they in good faith were attempting to enforce the prohibitory law. Garden City v. Legg, 126 Kan. 569, 268 P. 827.

Laws 1915, c. 235, p. 295: It shall be unlawful for any person under the influence of intoxicating liquor, or any exhilarating or stupefying drug, to

drive or have charge of any vehicle propelled by other than muscular power on the public highways of this state. Any violator of the provisions of this act shall be guilty of a misdemeanor, and fined not less than $5 nor more than $25, or be imprisoned in the county jail not less than 10 days. See State v. McLaughlin, 121 Kan. 693, 249 P. 612; State v. Ketter, 121 Kan. 516, 247 P. 430; State v. Sarver, 134 Kan. 98, 4 P.(2d) 440.

Laws 1917, c. 215, p. 283: Section 1 provides that it shall be unlawful for any person to keep or have in his possession for personal use or otherwise any intoxicating liquors, or permit another to have or keep or use intoxicating liquor on any premises owned or controlled by him, or to give away or furnish intoxicating liquors to another except druggists or registered pharmacists as hereafter provided. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and on conviction shall be fined not less than $100 nor more than $500, and imprisoned in the county jail from 30 days to 6 months.

Section 2 provides that it shall be unlawful for any common carrier to bring into this state or to carry from one place to another within the state intoxicating liquors for another or for his agent, where intended for personal use, and it shall be unlawful for any common carrier to deliver any intoxicating liquors that may be in its possession to any person for any purpose whatever. Any person violating any provisions of this act shall be guilty of a misdemeanor. It shall be unlawful for any person to receive any intoxicating liquor from any common carrier or agent thereof intended for personal use. Wine for communion purposes is excepted from the provisions of this act, with the proviso that a clergyman must file a statement with the county clerk of the receipt of same for such purposes.

Section 5 provides that any person, partnership, or corporation, having a stock of not less than $20,000 exclusive of its stock of alcohol, may sell alcohol for medical, mechanical, or scientific purposes to hospitals, schools, and manufacturers and to druggists, where such druggist is actually and in good faith engaged in the retail drug business. Said drug business may receive alcohol for the purpose of selling as hereinafter provided. A common carrier may deliver to a wholesale drug business, and upon delivery must file statement with the county clerk as to his receipt of the same. Any regularly established hospital that is engaged in the care of the sick or injured, or any school having a medical or scientific or mechanical course, or any person or corporation regularly engaged in manufacturing, may buy, receive, and possess such amount of alcohol as is necessary for their respective needs for medical, mechanical, and scientific purposes only. A common carrier may deliver to users of this kind, providing the statement above provided for shall be filed with the county clerk.

Citations applicable thereto: Unnecessary to allege defendant was not druggist or registered pharmacist, State v. Perello, 102 Kan. 695, 171 P. 630; violations of act are within persistent violator act, State v. Berry, 103 Kan. 891, 176 P. 649; act of 1917 constitutional, State v. Macek, 104 Kan. 742, 180 P. 985; State v. Kurent, 105 Kan. 13, 181 P. 603; unlawful possession and permitting liquors on premises are distinct offenses, State v. Macek, 104 Kan. 742, 180 P. 985; evidence of sale competent to show possession, State v. Hanger, 108 Kan. 115, 193 P. 1052; personal use of liquor is not punishable, State v. Munson, 111 Kan. 318, 206 P. 749; see, also, State v. Harris, 116 Kan. 387, 226 P. 715; State v. Harwi, 117 Kan. 74, 230 P. 331; State v. Cochran, 122 Kan. 182, 250 P. 1071; State v. Walbridge, 123 Kan. 386, 255 P. 83; State v. Bozick, 122 Kan. 517, 253 P. 554; Brockway v. Wagner, 126 Kan. 285, 268 P. 96; State v. Kucera, 126 Kan. 792, 271 P. 275; State v. Smith, 128 Kan. 139, 276 P. 80; State v. Bradley, 130 Kan. 759, 288 P. 735; State v. Wharton, 132 Kan. 409, 295 P. 656; State v. Colson, 134 Kan. 147, 4 P.(2d) 414; City of Topeka v. Heberling, 134 Kan. 330, 5 P.(2d)

816; State v. Corbin, 135 Kan. 79, 9 P.(2d) 627; State v. Dunning, 136 Kan. 5, 12 P.(2d) 809.

Laws 1917, c. 216, p. 286: Section 1 provides that the city attorney of any incorporated city shall be required to make inquiry into any violations of the prohibitory law, and he is authorized to issue subpœnas for such persons as he has reason to believe have any information concerning violations of this law, or said city attorney may file with the police judge or justice of the peace a written statement alleging any violation of the ordinances of said city relating to intoxicating liquors and præcipe shall then issue. The witness shall be sworn, and his testimony then reduced to writing and signed by the witness. If the testimony discloses that a violation has been committed, the city shall prosecute the person committing such offense, and may file such testimony together with the complaint against the person or persons having committed such offense in the police court of the city, and such testimony together with the complaint of the city attorney and verified by him on information and belief shall have the same effect as if such complaint had been verified positively, and thereupon warrant shall be issued for the arrest of the person or persons violating the law.

Laws 1917, c. 217, p. 288: This act provides that all cities of this state may enact and enforce ordinances relating to possession, receipt, transportation, and delivery of intoxicating liquors and provide punishment therefor in accordance with the state bone dry law above set out.

Citations applicable thereto: Ordinance may provide punishment different from other penalties, In re Hurston, 112 Kan. 238, 210 P. 495; ordinance need not provide for commitment for fines and costs, In re Hurston, 112 Kan. 238, 210 P. 495.

Laws 1919, c. 217, p. 294: Section 1 provides that all automobiles, vehicles, and other property used in the transportation or carrying of intoxicating liquors into this state and in carrying and transporting intoxicating liquors from one place to another within this state are hereby declared to be common nuisances.

Section 2 provides that, upon the filing of a complaint or information charging a common nuisance as above defined, a warrant shall issue authorizing the arrest of the person described in said complaint or information or the person or persons using the automobiles or other vehicle for the transportation of intoxicating liquors, to seize and take into custody all such vehicles so used, which he may find, and safely keep the same subject to the order of the court. It is not necessary to describe the automobile accurately. Notice shall be given to all persons 48 hours afterwards, claiming any interest in such vehicles, fixing a time and place at which all such persons claiming any interest may appear and answer the complaint made against such vehicles to show cause why the same should not be adjudged forfeited and ordered sold. Any person interested in the vehicle may file his answer in writing, setting up his claim thereto, and shall thereupon be admitted as a party defendant to the proceedings against such vehicle. Trial may be had in a summary manner before the court of the allegations of the complaint, and it shall be the duty of the county attorney to appear and adduce evidence in support of such allegations.

Section 4 provides that, if the court finds such vehicle to be a common nuisance, he shall order the officer in whose custody it is to sell the same publicly, and said officer shall sell the same after having given notice of the sale, and shall make return to the court issuing the order. The court shall declare forfeited the proceeds of said sale and order the money so received paid into the treasury of the county for the support of the schools. All intoxicating liquors therein found shall be destroyed.

Section 5 of the act provides for the taking of appeals from the judgments of the court in the same manner as in the case of criminal appeals.

Citations applicable thereto: For section 1, see the following: State v. Lee, 113 Kan. 462, 215 P.

299; State v. Carr, 114 Kan. 442, 218 P. 1007; State v. Robinson, 118 Kan. 775, 236 P. 647; and State v. Powell, 120 Kan. 731, 244 P. 1053.

For section 2, see the following: State v. Lee, 113 Kan. 462, 215 P. 299; State v. Carr, 114 Kan. 442, 218 P. 1007; and State v. Robinson, 118 Kan. 775, 236 P. 647.

For section 4, see the following: Section is constitutional, State v. Peterson, 107 Kan. 641, 193 P. 342; State v. Stephens, 109 Kan. 254, 198 P. 1087; interest of a bona fide mortgagee is forfeitable, State v. Peterson, 107 Kan. 641, 193 P. 342; State v. Stephens, 109 Kan. 254, 198 P. 1087; Grant Co. v. United States, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376; one violation is sufficient to declare forfeiture, State v. Stephens, 109 Kan. 254, 198 P. 1087.

For section 5, see State v. Lee, 113 Kan. 462, 215 P. 299; State v. Carr, 114 Kan. 442, 218 P. 1007.

Additional citations for chapter 217, Laws of 1919: Norton v. Board of County Com'rs of Saline County, 118 Kan. 659, 236 P. 819; State v. Brown, 119 Kan. 874, 241 P. 112; State v. Boucher, 126 Kan. 796, 271 P. 278; State v. Eccleston, 133 Kan. 354, 299 P. 646; State v. Davidson, 136 Kan. 406, 15 P.(2d) 404; State v. Universal Finance Corp., 136 Kan. 599, 16 P.(2d) 466; Barrett v. Hurd, 136 Kan. 799, 18 P.(2d) 184; State v. Bennell, 137 Kan. 183, 19 P.(2d) 443.

Laws 1923, c. 135, p. 193: Section 1 provides that it shall be unlawful for any person to brew or make any mash, wort, or wash, capable of distillation and intended for the production of spirits, or by any process of evaporation to separate alcoholic spirit from any fermented substance, and any person so doing shall be deemed guilty of a misdemeanor and punished as herein provided.

Section 2 provides that it shall be unlawful for any person to manufacture or have in his possession any still, boiler, or other vessel or apparatus to be used for the purpose of distilling or separating, by any process of evaporation, alcoholic spirit from any fermented substance or any part of such still, boiler, or other vessel or apparatus, and any person so doing or having any still, boiler, etc., or part thereof in their possession shall be deemed guilty of a misdemeanor.

Section 3 provides that the act does not apply to legitimate chemical testing laboratories.

Any person convicted of violating this act shall be punished by confinement in the county jail for a term of 6 months and by a fine of from one to five hundred dollars. Read, State v. Metzger, 121 Kan. 837, 250 P. 258; also State v. Sacks, 116 Kan. 150, 225 P. 738, and State v. Harris, 116 Kan. 387, 226 P. 715; State v. Johnson, 116 Kan. 58, 226 P. 245; State v. Finch, 128 Kan. 665, 280 P. 910, 66 A. L. R. 1369; State v. Martin, 129 Kan. 240, 282 P. 726; State v. Wharton, 132 Kan. 409, 295 P. 656.

Laws 1925, c. 158, p. 206: Section 1 provides that it shall be a felony for any one under the influence of intoxicating liquor or any exhilarating drug to injure another by reckless driving of a vehicle upon any public road, highway, street, etc. Any person so violating the provisions of this act shall be deemed guilty of a felony, and shall be fined not to exceed $3,000 or shall be imprisoned in the state penitentiary not to exceed 3 years or be punished by both.

Laws 1933, House Bill No. 27 (March 7), c. 291, permits the manufacture, sale, and possession of denatured or industrial alcohol.

Miscellaneous Cases Dealing With Some Interesting Phases of the Prohibitory Law During Its Existence in Kansas.

At the general election of November 7, 1882, John Foster was elected county attorney of Saline county. He took his office January 1, 1883. From that time until November saloons ran wide open in Salina and other towns in the county. Mr. Foster himself patronized the saloons. When complaints were made to him, he would bring suits in justice court and then continue them from time to time and finally dismiss them.

Wm. A. Johnston, the Attorney General (now Chief Justice of the Supreme Court of Kansas), deeming that something drastic must be done to restore respect for law, brought quo warranto proceedings against Foster in the Supreme Court to remove him from office. Thirty-six men from the body of the state were summoned to act as jurors. This was the first case of its kind in the history of the state, and the only case in which a jury was ever used in the Supreme Court. The case was hotly and vigorously contested at every point. The defendant admitted the main facts, but gave as his excuse for not enforcing the prohibitory law that: First, he believed it was not the wish of the people of the county to have this class of cases prosecuted because of the expense and uncertainty of conviction, and bad feeling it would bring; second, the sentiment, as he gleaned it from the results of the last election; third, no one had come to him and requested him to enforce the law; fourth, the city of Salina had ample ordinances and should attend to it and pay the expense; fifth, no person had volunteered to act as prosecuting witness.

The jury found for the state. The opinion was delivered by Chief Justice Horton and concurred in by all the justices. The State ex. rel. v. Foster, 32 Kan. 14, 48, 3 P. 534. A rehearing was asked and denied, and the case appealed to the Supreme Court of the United States, where it was affirmed. Foster v. Kansas ex rel. Johnston, 112 U. S. 205, 5 S. Ct. 8, 97, 28 L. Ed. 696, also reported in 32 Kan. 765.

Where an incorporated association purchases beer outside of the state of Kansas and brings it into the state, and then sells chips to its members, each chip representing a drink or glass of beer, and then furnishes a drink or glass of beer for each chip returned by a member, and the beer is drunk as a beverage, and neither the association nor any of its members has any permit to sell intoxicating liquors, held, that the members of the association who sell these chips, and the president of the association who is present at the time and knows of these things, may be prosecuted, convicted of and punished for selling intoxicating liquor in violation of law. State v. Horacek, 41 Kan. 87, 21 P. 204, 3 L. R. A. 687.

The search and seizure clause of the prohibitory law is not in contravention of either section 10, or section 15, of the Bill of Rights. State v. O'Connor, 3 Kan. App. 594, 43 P. 859.

It is no defense to one who violates the prohibitory liquor law that any officer, in order to detect and prosecute him for the violation of the law, solicited him to obtain and sell intoxicating liquor to the officer, and that his prosecution for the violation was based on the evidence so obtained. State v. Driscoll, 119 Kan. 473, 239 P. 1105.

An automobile which the owner places in the possession of another for general use, and such other uses it in the unlawful transportation of intoxicating liquors without the knowledge of the owner, is subject to the forfeiture and condemnation under the statute relating to liquor nuisances, following State v. Peterson, 107 Kan. 641, 193 P. 342, and State v. Stephens, 109 Kan. 254, 198 P. 1087. State v. Brown, 119 Kan. 874, 241 P. 112.

Officers of experience who found the liquor transported and determined by the sense of smell and from its appearance that it was strong intoxicating liquor are qualified to testify that it was intoxicating, and no error was committed in the admission of such testimony. State v. Brown, 119 Kan. 874, 241 P. 112.

Where violations of the liquor law in a clubroom or society are allowed, the officers and members thereof responsible for such violations are all subject to criminal prosecution. City of Coffeyville v. Reed, 117 Kan. 85, 230 P. 320.

A prosecution for the persistent violation of the prohibitory liquor law may be maintained although the former conviction occurred more than 2 years before the repeated and later offense. The statute of limitations on prosecutions for public offenses has no application to the time of the former conviction. State v. Parise, 117 Kan. 106, 230 P. 304.

A liquor still and apparatus taken from a dwelling house during the owner's absence by the sheriff and

county attorney acting without semblance of legal authority to search and seize may be introduced in evidence in a criminal prosecution of the possessor for maintaining a public nuisance. State v. Johnson, 116 Kan 58, 226 P. 245.

· Intoxicating liquor, possession of which is a crime, taken from a traveler's handbag, following his alighting from a train on a completion of an interstate journey, by a police officer acting without semblance of authority, may be introduced in evidence in a criminal prosecution of the possessor, though he made timely application of the court for reversal of the error. State v. Johnson, 116 Kan. 179, 226 P. 251.

· A conviction upon one count for having possession of intoxicating liquor and upon another for the sale of the same liquor does not violate the constitutional provision against double jeopardy for the same offense. Where the information does not show on its face the facts on which are based the claim that the conviction has been had upon two different counts for the same offense, such claim cannot properly be presented by a motion in arrest of judgment. State v. Ford, 117 Kan. 735, 232 P. 1023.

One charged with the offense of the unlawful manufacture of intoxicating liquor may be convicted of an attempt to commit that offense. State v. Rooney, 118 Kan. 618, 236 P. 826.

· The day and month of the year when the offense was committed was not stated in the information, but it was alleged that the offense was committed within 2 years prior to the filing of the information. Held, that the omission to fill out the blank of the day and month was not a good reason for quashing the information. State v. Harwi, 117 Kan. 74, 230 P. 331.

· In prosecution for the unlawful sale of intoxicating liquor, a bargain on an executory contract is not sufficient, but there must be a completed sale which passes the property to sustain conviction. State v. Fields, 115 Kan. 489, 223 P. 285.

Laws of 1919, c. 217, providing for the forfeiture of automobiles used in unlawful transportation of intoxicating liquor, does not violate United States Constitutional Amendment 14, because the interest of an innocent holder is not preserved from forfeiture when the automobile itself is adjudged to be a common nuisance and forfeited. State v. Stephens, 109 Kan. 254, 198 P. 1087.

It is proper to refuse to instruct that "spotter" testimony should be taken with extreme care and suspicion, when there is nothing in the conduct or demeanor of such person to reflect unfavorably upon his credibility, except his admission that he made the purchase from one engaged in the illegal selling of intoxicating liquor, intending to testify if called upon to do so. State v. Keys, 4 Kan. App. 14, 45 P. 727.

The jugs, bottles, and vessels, supposed to contain intoxicating liquors, procured by an officer in making the arrest in a liquor case at defendant's place of business, may be offered in evidence upon the trial, together with the labels printed and written matter thereon. State v. Stockman, 9 Kan. App. 422, 58 P. 1032; Id., 9 Kan. App. 888, 58 P. 1006; State v. O'Connor, 3 Kan. App. 594, 43 P. 859.

A proprietor conducting a business is not criminally responsible for the alleged possession or sale of intoxicating liquor surreptitiously brought into his place of business by an agent or employee, and where kept and handled there without the employer's authority, knowledge, or consent. State v. Caldwell, 115 Kan. 374, 223 P. 299.

In State v. Finch, 128 Kan. 665, 280 P. 910, a question arose as to whether or not the Attorney General could control a liquor prosecution without the concurrence of or in opposition to the county attorney. The facts were that Finch procured an agreement with the Attorney General that he would impart information concerning the operation of a still if the Attorney General would grant him immunity. Afterwards the county attorney of Shawnee county prosecuted Finch for the identical matter in which the Attorney General had agreed to give Finch immunity. Finch was convicted in the district court over the protest of the Attorney General, who appealed to the Supreme Court, where it was held that the Attorney General, subject to the direction of the Governor and the Legislature, is the chief law officer of the state, and, where he appears in a legal prosecution, he is entitled to have full charge thereof and ordinarily the case should be dismissed if he so directs. The powers of the Attorney General were considered and discussed at length in the opinion; also the state's public policy concerning enforcement of the prohibitory liquor law.

Conclusion.

The highest courts have long since taken judicial notice that the beverage liquor traffic is the dominant cause of crime, misery, and pauperism. In State v. Durein, 70 Kan. 13, 80 P. 987, 989, it was said in the opinion: "Intoxicating liquor is * * * the prolific source of disease, misery, pauperism, vice, and crime. Its power to weaken, corrupt, debauch, and slay human character and human life is not destroyed or impaired because it may be susceptible of some innocent uses, or may be used with propriety on some occasions. The health, morals, peace, and safety of the community at large are still threatened." · See, also, Adler v. Whitbeck, 44 Ohio St. 539, 9 N. E. 672; Schwuchow v. Chicago, 68 Ill. 444; The License Cases, 5 How. 504, 592, 12 L. Ed. 256; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620.